STATE OF CONNECTICUT *v.* DOUGLAS A. DeCHAMPLAIN

COTTER, C. J., LOISELLE, SPEZIALE, PETERS and HEALEY, Js.

Argued October 4, 1979—decision released February 5, 1980

*Stuart M. Schimelman*, assistant state's attorney, with whom, on the brief, were *C. Robert Satti*, state's attorney, and *D. Michael Hurley*, assistant state's attorney, for the appellant (state).

*Peter W. Rotella*, for the appellee (defendant).

SPEZIALE, J. In an information filed by the state's attorney for the judicial district of New London, the defendant was charged with possession of over a kilogram of marihuana with intent to sell by a person not drug-dependent in violation of § 19-480a (b) of the General Statutes.[1] The defendant filed a motion to suppress the use as evidence of marihuana that was seized from apartment 7A, Jedholme Apartments, route 169, Lisbon, on the grounds that the affidavit in support of the application for the search warrant did not establish probable cause to believe that marihuana, in fact, was within these premises. The motion to suppress was granted by the trial court (*Spallone, J.*). The state's motion to reargue the motion to suppress was denied, and on the same day the defendant's

[1] Section 19-480a (b) of the General Statutes provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

motion to dismiss was granted. With the permission of the trial court, the state appealed from the judgment of dismissal.

The only issue presented is whether the affidavit in support of the application for the search and seizure warrant established probable cause to believe that marihuana was located at apartment 7A, Jedholme Apartments.

In the application for the search and seizure warrant, the affidavit of the police disclosed, inter alia, the following facts:[2]   On June 15, 1978, Trooper David Zupnik of the state police learned from Tim Malo that Malo had sold $15,000 worth of marihuana, and that he had acquired the drug from a person named "Doug," whom he contacted by telephone at number 376-2266. Trooper Zupnik learned from the state police criminal intelligence division that this telephone number was listed to Rita DeChamplain at apartment 7A, Jedholme Apartments. Malo would meet "Doug," who operated a yellow MG, in Canterbury, and Malo would buy the marihuana for $425 per pound. On June 27, 1978, at 4:05 p.m., Malo telephoned "Doug" at the above number and verified that a $425 deal he previously had made to purchase marihuana would take place at 4:30 p.m. on Depot Road, Canterbury. At about 3:53 p.m. that same day, Officer Frank Gavigan of the Norwich police saw a tan MG[3] regis-

[2] The affidavit, application, and search and seizure warrant are set forth in the appendix.

[3] In passing we note that the MG is alternately referred to in the application for the search and seizure warrant as "yellow" or "tan." Inasmuch as this discrepancy was not mentioned by either party in the briefs or during oral argument, and does not affect our decision on the merits of this case, further discussion of the point is unnecessary.

tered to Douglas A. DeChamplain parked near the building that houses apartment 7A, Jedholme Apartments. Officer Gavigan observed the MG leave the apartment complex area at 4:20 p.m. and watched it until it turned east onto Depot Road; the car did not stop en route.

Trooper Zupnik observed the MG arrive at the location where the drug sale was arranged to take place and saw it stop behind a vehicle occupied by Tim Malo and state police trooper Michael Meehan, who was working undercover. Trooper Zupnik learned from Trooper Meehan that DeChamplain, the operator of the MG, showed Malo and him a plastic bag containing plant material which DeChamplain represented to be one pound of marihuana. At that time, DeChamplain, "of" apartment 7A, Jedholme Apartments, was arrested on Depot Road, Canterbury and charged with possession of marihuana with intent to sell and with possession of over four ounces of marihuana. Two plastic bags containing plant materials were seized at the time of DeChamplain's arrest; a field test of this substance confirmed the presence of marihuana.

On the basis of the above facts, a search and seizure warrant was issued by a judge of the Superior Court (*Quinn, J.*) for the seizure of marihuana, scales, and drug records from apartment 7A, Jedholme Apartments.

As previously noted, the state, with the permission of the trial court, has appealed from the judgment dismissing the case. The state claims that the trial court erred in ordering the suppression of the use of marihuana as evidence when it decided that the affidavit in support of the application for the search and seizure warrant did not establish proba-

ble cause to believe that marihuana was located in apartment 7A.[4] We do not agree with the claim of the state and hold that the trial court did not err in ruling that the facts set forth in the affidavit do not establish probable cause to believe that marihuana would be found at apartment 7A.

The fourth amendment to the United States constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation."[5] See also Conn. Const., art. I § 7 ("no warrant to search any place, or to seize any person or things, shall issue without . . . probable cause supported by oath or affirmation").[6] " 'Through the fourteenth amendment the fundamental federal constitutional safeguards as to the issuance of warrants embodied in the fourth amendment, as interpreted and applied in decisions of the United States Supreme Court, are made obligatory upon the states. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726.' *State* v. *Licari,* 153 Conn. 127, 132, 214 A.2d 900." *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972).

[4] Whether the affidavit provided probable cause to believe that the other items named in the warrant (scales and drug records) were located in apartment 7A is not before the court.

[5] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[6] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

The fourth amendment " 'protects the privacy and security of persons in two important ways. First, it guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In addition, this Court has interpreted the amendment to include the requirement that normally searches of private property be performed pursuant to a search warrant issued in compliance with the warrant clause. See, e.g., *Mincey* v. *Arizona,* 437 U.S. 385, 390 [98 S. Ct. 2408, 57 L. Ed. 2d 290] (1978); *United States* v. *Chadwick,* 433 U.S. 1, 9 [97 S. Ct. 2476, 53 L. Ed. 2d 538] (1977); *United States* v. *United States District Court,* 407 U.S. 297, 317 [92 S. Ct. 2125, 32 L. Ed. 2d 752] (1972); *Katz* v. *United States,* 389 U.S. 347, 357 [88 S. Ct. 507, 19 L. Ed. 2d 576] (1967); *Agnello* v. *United States,* 269 U.S. 20, 33 [46 S. Ct. 4, 70 L. Ed. 145] (1925). In the ordinary case, therefore, a search of private property must be *both* reasonable *and* performed pursuant to a properly issued search warrant.' (Emphasis added.) *Arkansas* v. *Sanders,* 442 U.S. 753, 757–58, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *Trupiano* v. *United States,* 334 U.S. 699, 705, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948); *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948)." *State* v. *Federici,* 179 Conn. 46, 51–52, 425 A.2d 916 (1979).

In reviewing an affidavit for a search and seizure warrant we must ascertain whether the facts in the affidavit are sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for

the issuance of the warrant. *State* v. *Williams,* 169 Conn. 322, 326, 363 A.2d 72 (1975); *State* v. *Rose,* 168 Conn. 623, 627–28, 362 A.2d 813 (1975); *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967). The judge is entitled to rely on his own common sense and the dictates of common experience, although the standard for determining probable cause is an objective one. *State* v. *Jackson,* 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972); (the fourth amendment does not deny "the support of the usual inferences which reasonable men draw from evidence"). See also *State* v. *Romano,* 165 Conn. 239, 245, 332 A.2d 64 (1973); *Spinelli* v. *United States,* 393 U.S. 410, 415, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1968). Purely conclusory affidavits by the affiant or informant that he or she believes that probable cause exists, however, cannot be relied upon; the underlying circumstances upon which that belief is based must be detailed in the affidavit. *Aguilar* v. *Texas,* 378 U.S. 108, 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1963); *Nathanson* v. *United States,* 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933); *State* v. *Rose,* supra, 627; *State* v. *Allen,* supra. "The issuing authority must determine for himself the persuasiveness of the facts relied on to show probable cause. *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723." *State* v. *Allen,* supra, 391. The issuing judge must not merely serve as a rubber stamp for the police. *State* v. *Rose,* supra, 627.

Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction; *State* v. *Doe,* 115 N.H. 682, 685, 371

A.2d 167 (1975); 1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment (1978) §§ 3.1 (b) and 3.7; cf. *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967); ("mere" evidentiary materials may be validly seized as well as instrumentalities, prints, weapons, and contraband); *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. *State* v. *Doe,* supra, 685; *Carroll* v. *United States,* 267 U.S. 132, 158, 45 S. Ct. 280, 69 L. Ed. 543 (1925); 1 LaFave, Search and Seizure, supra, §§ 3.1 (b) and 3.7; comment, "Search and Seizure in the Supreme Court: Shadows on the Fourth Amendment," 28 U. Chi. L. Rev. 664, 687 (1961). See also *Rugendorf* v. *United States,* 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887 (1963); *Husty* v. *United States,* 282 U.S. 694, 51 S. Ct. 240, 75 L. Ed. 629 (1931); *State* v. *Rose,* supra, 629–32; Kamisar, LaFave & Israel, Modern Criminal Procedure (1974), pp. 228–29. The factors differ if probable cause to *arrest* is at issue. In that case, probable cause exists if: (1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed that crime. *State* v. *Doe,* supra, 685; 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (1978) § 3.7, p. 680; see also *Ker* v. *California,* 374 U.S. 23, 36 n.8, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Wong Sun* v. *United States,* 371 U.S. 471, 481 n.9, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).[7] " 'In the case of arrest,

---

[7] Although the precise determinations differ when probable cause to *search and seize* is at issue as opposed to probable cause to *arrest,* " '[i]t is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search.' 1 LaFave, Search and Seizure: A Treatise on the Fourth Amend-

the conclusion concerns the guilt of the arrestee, whereas in the case of search warrants, the conclusions go [to] the connection of the items sought with crime and to their present location.' This distinction is a critical one, and is particularly significant in search warrant cases, for it means that the probable cause determination in that context is a much more complex matter; the need to determine the probable 'present location' of certain items, for example, gives rise to a question concerning the timeliness of the information which is not ordinarily a matter of concern in arrest cases." 1 LaFave, Search and Seizure, op. cit. § 3.1 (b), p. 442 (quoting, in part, comment, 28 U. Chi. L. Rev. 664, 687 (1971) (footnote omitted).

There is no question that marihuana is connected to the criminal activity for which DeChamplain was arrested. Possession of marihuana is an element of the crime of possession of marihuana with intent to sell in violation of § 19-480a (b) of the General Statutes. With respect to the place to be searched, however, the affidavit in the application for the search and seizure warrant did not provide the issuing judge with sufficient facts to permit the determination of the probable "present location" of the marihuana.

The issuing judge, in determining whether probable cause exists, must consider only the information contained in the affidavit. General Statutes

ment (1978) § 3.1 (b), p. 441; see *Chambers* v. *Maroney*, 399 U.S. 42, 47, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Ker* v. *California*, 374 U.S. 23, 41–43, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963); *Johnson* v. *United States*, 333 U.S. 10, 15, 68 S. Ct. 367, 92 L. Ed. 436 (1948)." *State* v. *Federici*, 179 Conn. 46, 55 n.5, 425 A.2d 916 (1979).

§ 54-33a (c) ;[8] *State* v. *Williams,* 170 Conn. 618, 628, 368 A.2d 140, cert. denied, 429 U.S. 865, 97 S. Ct. 174, 50 L. Ed. 2d 145 (1976) ; see also *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967) ; *State* v. *DeNegris,* 153 Conn. 5, 9, 212 A.2d 894 (1965). The consideration of other information is improper. *State* v. *Williams,* 170 Conn. 618, 628, 368 A.2d 140 (1976). In considering the sufficiency of the affidavit, we confine ourselves "to the facts which appear on the face of the affidavit or which properly may be inferred therefrom." Id., 629. Whether a search is unreasonable under the fourth amendment depends upon the facts and circumstances of each case. *Cooper* v. *California,* 386 U.S. 58, 59, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1966), reh. denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243 (1967); *State* v. *Tully,* 166 Conn. 126, 135, 348 A.2d 603 (1974).

As previously stated, the trial court did not err in concluding that the facts set forth in the affidavit do not establish probable cause to believe that marihuana would be found at apartment 7A.

The affidavit here contained a conclusory statement to the effect that the affiants had probable cause and reasonable grounds to believe that there was marihuana in apartment 7A. To the extent

[8] Section 54-33a (c) of the General Statutes provides: "A warrant shall issue only on affidavit sworn to by the complainant or complainants before the judge and establishing the grounds for issuing the warrant, which affidavit shall be part of the arrest file. If the judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person, place or thing to be searched. The warrant shall be directed to any police officer or a regularly organized police department or any state policeman. It shall state the grounds or probable cause for its issuance and it shall command the officer to search within a reasonable time the person, place or thing named, for the property specified."

that underlying circumstances appear in the affidavit, these circumstances do not logically support the conclusion that there was probable cause to believe that marihuana ever was located in the apartment in question, much less that it was located there at the time the warrant was issued. There is no indication in the affidavit that either Trooper Zupnik or Officer Gavigan, the affiants, or the informant, Tim Malo, ever saw or learned from other sources that marihuana was located in apartment 7A. The affidavit contains no statement to the effect that either of the affiants or the informant was ever in apartment 7A. Compare *State* v. *Rose,* supra. Nor does it set forth facts observed or perceived by any of these persons from which the presence of marihuana in apartment 7A reasonably could have been inferred.

Telephone calls by an informant to a particular number to "order" illicit drugs do not per se establish probable cause to believe that the drugs themselves are located in the same premises as the telephone at which the "order" is received. Further, the other underlying circumstances in the affidavit do not add anything which would support probable cause to believe that marihuana was located in apartment 7A. Although Officer Gavigan saw the MG parked "near" the building that houses apartment 7A, there was no indication in the affidavit that anyone saw DeChamplain leave apartment 7A or that he was carrying a package when he exited from that apartment. It was just as likely that the marihuana sought to be seized was in another location—for example, in another apartment in the complex or in the MG—as it was that it was in apartment 7A. Certainly the allegation that telephone number 376-2266 was listed to a Rita DeChamplain

at apartment 7A does not provide the additional support needed to establish probable cause. In and of itself the listing of a telephone number to this individual suggests no criminal activity. See *Spinelli* v. *United States,* 393 U.S. 410, 418, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1968). Compare *State* v. *Romano,* 165 Conn. 239, 332 A.2d 64 (1973).

We recognize that "in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, and that their determination of probable cause should be paid great deference by reviewing courts." *Spinelli* v. *United States,* supra, 419. Nonetheless, the distinction between probable cause and mere conjecture still exists. "[T]he grounds for a search must satisfy *objective* standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests." (Emphasis added.) *Torres* v. *Puerto Rico,* 442 U.S. 465, 471, 99 S. Ct. 2425, 61 L. Ed. 2d 1 (1979). Although one may surmise that there was a chance that marihuana might have been found at apartment 7A, such conjecture does not rise to the level of probable cause to believe that marihuana, in fact, was located there.

There is no error.

In this opinion COTTER, C. J., PETERS and HEALEY, Js., concurred.

Appendix follows the dissenting opinion.

LOISELLE, J. (dissenting). I agree with all of the legal principles which the majority opinion sets forth, but I respectfully disagree with the conclu-

sion that the facts recited in the affidavit, when taken as a whole, are insufficient to support probable cause.

Our disagreement, no doubt, arises from our different interpretations of what constitutes probable cause. In *Brinegar* v. *United States,* 338 U.S. 160, 173, 69 S. Ct. 1302, 93 L. Ed. 1879 (1948), the court discussed the difference between proof of guilt in a criminal case and probable cause to arrest or search, and stated that "[t]here is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the modes of proof required to establish them." And, as the term "probable cause" implies, the issue is one of probabilities, and our determination is to be reached by an application of the factual and practical considerations of everyday life on which reasonable and prudent persons act. *State* v. *Jackson,* 162 Conn. 440, 445, 294 A.2d 517 (1972) ; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75 (1965), citing *Brinegar* v. *United States,* supra, 175.

The test is best stated in *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), where the court said (p. 419) : "[W]e do not retreat from the established propositions that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, *Beck* v. *Ohio,* 379 U.S. 89, 96 [85 S. Ct. 223, 13 L. Ed. 2d 142] (1964) ; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, *McCray* v. *Illinois,* 386 U.S. 300, 311 [87 S. Ct. 1057, 18 L. Ed. 2d 62] (1967) ; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on

the use of their common sense, *United States* v. *Ventresca,* 380 U.S. 102, 108 [85 S. Ct. 741, 13 L. Ed. 2d 684] (1965); and that their determination of probable cause should be paid great deference by reviewing courts, *Jones* v. *United States,* 362 U.S. 257, 270–71 [80 S. Ct. 725, 4 L. Ed. 2d 697] (1960)."

It is true that a reading of the affidavit renders it possible that the defendant had narcotics stashed in his automobile or in a location outside his apartment, but in dealing with probable cause we are dealing with probabilities. This is a close case, but in my opinion the affidavit was sufficient to establish a reasonable inference upon which reasonable and prudent persons would act in issuing the search warrant. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ventresca,* supra, 109. See also *Jones* v. *United States,* 362 U.S. 257, 270, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960).

Appendix

"AFFIDAVIT AND APPLICATION
Search and Seizure Warrant
CCT-7A Rev. 9/72

STATE OF CONNECTICUT
CIRCUIT COURT

TO: A Judge of the Circuit Court

The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Marijuana, scales, drug records

[X] is possessed, controlled, designed or intended for use as a means of committing the crime of . . . Possession of Marijuana with Intent to Sell 19-480 (b) Possession of over four ounces of Marijuana 19-481 (b)

And is within or upon a certain person, place, or thing, to wit . . . Apt. 7A, Jedholme Apts, Rt 169, Lisbon, Conn., located on the north side of a dark brown stained two family wood frame dwelling on the east side of Rt 169, Lisbon, Conn., about 150 feet north of Lisbon Heights Rd, with 7A on the red door on the east side of this building. And that the facts establishing the grounds for issuing a Search and Seizure Warrant are the following . . .

1. That I Trooper David A. Zupnik have been a regular member of the Connecticut State Police Department for the past seven and one half years, and am presently assigned to the Statewide Narcotic Task Force—East, Montville, Connecticut.

2. That I, Off. Frank Gavigan, have been a regular member of the City of Norwich Police Department for the past six years and am presently assigned to the Statewide Narcotic Task Force—East, Montville, Connecticut.

3. That on 06/15/78, Tpr. David Zupnik learned from Tim Malo, Hanson Rd., Plainfield, Conn. that Malo had sold about $15,000.00 worth of marijuana in the past seven months; and that his source of marijuana was a person known to him as DOUG who he contacted by telephone at 376-2266 to place an order. Malo would then meet DOUG, who operated a yellow MG, on Butts Bridge Rd, Canterbury Conn. for the marijuana delivery, and that this marijuana sold for $425.00 per pound.

4. That on 06/27/78, at about 4:05 PM, Tim Malo of Hanson Rd., Plainfield, Conn. called a male named DOUG, his marijuana connection, at 376-2266 and verified that the $425.00 one pound marijuana deal he had previously arranged would take place and setting the time to meet to make the deal as 4:30 PM, 06/27/78 on Depot Rd., Canterbury, Conn.

5. That on 06/27/78 at about 3:53 PM affiant Off. Frank Gavigan observed the 1976 MG midget tan convertible, Ct. passenger UX-4261, listed to Douglas A. DeChamplain, parked near the building that houses apartment 7A, Jedholme Apartments, Rte 169, Lisbon, Connecticut. And that at about 4:20 PM, Officer Gavigan observed this vehicle leave that location with one white male occupant and drive north on Rte. 169, Lisbon, Connecticut until it turned east onto Depot Rd., Canterbury, Connecticut at about 4:24 PM and noted no stops enroute.

6. That on 06/27/78 at about 4:28 PM, affiant Tpr. David A. Zupnik observed the 1976 MG Midget, tan convertible, Ct. UX-4261 with one white male occupant arrive at the pre-arranged location on Depot Rd., Canterbury, Connecticut, about 200 ft. south of Butts Bridge Rd. and park behind the vehicle occupied by Tpr. Michael Meehan (SWNTF-E, working in undercover capacity) and Tim Malo of Hanson Rd., Plainfield, Conn.

7. That Tpr. David A. Zupnik learned from Tpr. Michael Meehan that on 06/27/78 at about 4:29 PM the white male operator of Ct. UX-4261, 1976 MG Midget tan convertible showed Tpr. Michael Meehan and Tim Malo a plastic bag containing plant material which he represented to be one pound of marijuana, and Tpr. David A. Zupnik overheard

the operator of UX-4261 say that it (meaning the bag of marijuana) contained a lot of red and gold (meaning red and gold color marijuana).

8. That on 06/27/78 at about 4:30 PM, Douglas A. DeChamplain, DOB 08/05/58, of Apt. 7A, Jedholme Apartments, Rte. 169, Lisbon, Conn. was arrested on Depot Rd., Canterbury, Conn., and charged with possession of marijuana with intent to sell and possession of over four ounces of marijuana, and advised of his rights by Tpr. David A. Zupnik and that at the time of the arrest Tpr. Zupnik seized a plastic bag containing about one pound of plant material, represented by Douglas A. DeChamplain to be one pound of marijuana that DeChamplain was offering for sale for $425.00, a pre-arranged price, and Tpr. Zupnik also seized a second plastic bag of material which DeChamplain had in a brown paper bag in his lap while seated in UX-4261, the 1976 MG Midget tan convertible.

9. That on 06/27/78, Tpr. David A. Zupnik field tested the plant material in the two plastic bags seized from Douglas A. DeChamplain (parg. 7 above) with Duquenois Reagent and obtained a positive reaction for the presence of marijuana in the samples from each bag.

10. That Tpr. David A. Zupnik learned from State Police Criminal Intelligence Division that the telephone service 376-2266 is listed to Rita DeChamplain at apartment 7A, Jedholme Apartments, Rte. 169, Lisbon, Conn.

11. That on 06/27/78, Off. Frank Gavigan viewed apartment 7A, Jedholme Apartments, Rte. 169, Lisbon, Conn. and noted that Apartment 7A is located on the north side of the dark brown stained two family wood frame dwelling, on the east side

of Rte 169, Lisbon, Conn. about 150 feet north of Lisbon Heights Rd. with 7A on the red door on the east side of this building.

12. That based on the aforementioned facts, the affiants have probable cause and reasonable grounds to believe that there is marijuana, scales and records of drug transactions at apartment 7A, Jedholmes Apartments, Rte. 169, Lisbon, Ct. in violation of Sections 19-480 (b) and 19-481 (b) of the Connecticut General Statutes.

The undersigned has not presented this application in any other court or to any other judge.

Wherefore the undersigned prays that a warrant may issue commanding a proper officer to search said person or to enter into upon said place or thing, search the same, and take into custody all such property.

Signed at Griswold, Connecticut, this 27th day of June, 1978

David A. Zupnik      #91

Signature and Title of Affiant

Signed at Griswold, Connecticut, this 27th day of June, 1978

Frank Gavigan      #19

Signature and Title of Affiant

JURAT Subscribed and sworn to before me this 27th day of June, 1978

Quinn, J.

Signature Judge of the Superior Court"

"SEARCH AND SEIZURE WARRANT

STATE OF CONNECTICUT
CIRCUIT COURT

The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the undersigned, a Judge of the Circuit Court, the undersigned (a) is satisfied therefrom that grounds exist for said Application, and (b) finds that said Affidavit establishes grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said Affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing Affidavit and Application is within or upon the person, if any, named or described in the foregoing Affidavit and Application, or the place or thing, if any, described in the foregoing Affidavit and Application, under the conditions and circumstances set forth in the foregoing Affidavit and Application, and that, therefore, a Search and Seizure Warrant should issue for said property.

NOW THEREFORE, by Authority of the State of Connecticut, I hereby command any Police Officer of a regularly organized police department or any State Policeman to whom these presents shall come within ten days after the date of this warrant to

[X] enter into or upon and search the place or thing described in the foregoing Affidavit and Application, to wit Apt. 7A, Jedholme Apts., Rte 169, Lisbon, Conn. located on the north side of a dark brown stained two family wood frame dwelling on

the east side of Rte 169, Lisbon, Conn. about 150 ft. north of Lisbon Heights Rd., with 7A on red door on east side of this building.

for the property described in the foregoing Affidavit and Application, to wit: marijuana, scales and drug records and upon finding said property to seize the same take and keep it in custody until the further order of the court, and with reasonable promptness make due return of this warrant accompanied by a written inventory of all property seized.

Signed at Griswold,
Connecticut, this 27th
day of June, 1978    Quinn, J.

Signed Judge of the
Superior Court"