UNITED STATES of America

v.

Joseph A. TRAVISANO.

Crim. No. 82–1100(WWE).

United States District Court,
D. Connecticut.

March 30, 1983.

Alan H. Nevas, Jeremiah F. Donovan, New Haven, Conn., for plaintiff.

Richard Reeve, New Haven, Conn., for defendant.

## RULINGS ON MOTION TO SUPPRESS EVIDENCE AND MOTION TO DISMISS

EGINTON, District Judge.

Defendant in this action, Joseph Travisano, was indicted in a two-count indictment alleging possession of a firearm in violation of 26 U.S.C. §§ 5861, 5871 and 18 U.S.C. App. § 1202(a). These charges were brought as the result of the seizure of a shotgun from 371 Elm Street, West Haven, Connecticut. The seizure was made pursuant to a search warrant signed by a judge of the Superior Court of the State of Connecticut. The shotgun was not an item sought in the warrant, although a .38 calibre handgun was listed. None of the items enumerated in the warrant were found at 371 Elm Street.

Defendant has moved to suppress the shotgun from evidence and to dismiss count two of the indictment. This court heard oral argument and counsel filed memoranda of law.

### I. *MOTION TO SUPPRESS EVIDENCE*

Defendant argues that the affidavit relied upon by the judge in granting the search warrant was fatally defective in that it did not establish probable cause to believe that the evidence sought would be secreted within the residence searched.[1] This court agrees that the affidavit was defective and GRANTS the motion to suppress the shotgun seized during the search.

Although it is well-established that searches conducted pursuant to warrants are preferred over warrantless searches, *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–746, 13 L.Ed.2d 684 (1965), this preference should not unduly restrict the scope of this court's review. The privacy interests protected by the fourth amendment are far too important to allow such interests to be invaded by adopting an overly deferential stance.[2] The purpose of the court's review is to ensure that warrants are issued only upon a showing of probable cause. "While an affidavit supporting a search warrant should not be read in a grudging or technical manner, . . . neither should it require the magistrate, or a reviewing court, to use imagination to supply essential details critical to determining probable cause." *United States v. Karathanos,* 531 F.2d 26, 31 (2d Cir.) (citations omitted), *cert. denied,* 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976).

In analyzing the existence of probable cause, the court starts by examining the affidavit. The facts alleged in the affidavit that are relevant to the determination of probable cause to search the residence at 371 Elm Street are as follows:

(1) On August 9, 1982 at approximately 2:13 p.m. a robbery occurred at the AAA Motor Club in Hamden, Connecticut during which an AAA employee was shot and seriously wounded. An AAA flight bag containing bank deposit bags holding in excess of $35,000 in cash and $45,000 in checks was taken.

(2) One of numerous witnesses interviewed, Randy Borruso, stated that he

---

1. Defendant also claimed that even if the warrant passes muster, the seizure of the gun was improper. The warrant did not authorize the seizure of a shotgun. *But see Coolidge v. New Hampshire,* 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037–2042, 29 L.Ed.2d 564 (1971) (plain view); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (protective seizure). The defendant does not currently press this claim.

2. The government asks the court to adopt a "good faith" exception to the exclusionary rule. The Supreme Court has not yet adopted this exception and neither will this court. *See Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 436, 74 L.Ed.2d 595 (1982) (Supreme Court has restored case to calendar for reargument on good faith exception); *United States v. Karathanos,* 531 F.2d 26, 32–33 (2d Cir.), *cert. denied,* 428 U.S. 910, 96 S.Ct. 3221, 49 L.Ed.2d 1217 (1976) (good faith exception rejected).

observed two subjects running from the area of the motor club and entering an older model white Cadillac which contained a third male. According to this witness, the Cadillac bore a vanity plate on its front which read "Baby Joe" and a Connecticut license plate with the first two letters YE.

(3) In the course of the investigation, it was determined that three white males were responsible for the robbery. The affidavit did not include more detailed descriptions of any of these men.

(4) A West Haven police officer recalled having seen a vehicle matching the description on Elm Street in West Haven, Connecticut. On August 10, 1982, the West Haven Police Department reported having found a vehicle bearing Connecticut registration number YE1034 parked in the driveway of 371 Elm Street, West Haven. Randy Borruso positively identified this Cadillac.

(5) "[T]hrough West Haven Police" it was determined that this vehicle "in the past" had a front vanity plate reading "Baby John."

(6) During surveillance on August 10, 1982, between 10:30 a.m. and 12 noon, a white female operated the vehicle. There was no vanity plate on the front of it.

(7) "Through the news media, the public was aware that the Hamden Police Dept. was looking for a white Cadillac with a vanity plate on the front."

(8) The vehicle with Connecticut registration number YE1034 is a 1970 Cadillac registered to Marie Travisano of 371 Elm Street. A frequent operator of this vehicle is known by the West Haven Police Department to be the owner's son, Mark Travisano.

■ To establish probable cause for the search of defendant's residence, two factual showings must be made: 1) that a crime has been committed and 2) that there is probable cause to believe that evidence of that crime is located at the place to be searched. *United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). The affidavit establishes that a rob-

bery occurred at the Hamden AAA Motor Club. The defendant concedes, and the court agrees, that the affidavit contains sufficient information to support a finding of probable cause to search the car. In the circumstances of this case, however, the validity of the search of the car is irrelevant to the validity of the search of the house. *See United States v. Morris,* 647 F.2d 568 (5th Cir.1981).

The defendant contends that the second part of the probable cause requirement has not been satisfied with regard to the residence at 371 Elm Street. Although the nexus between the objects to be seized and the premises to be searched need not rest on direct observation, here that observation cannot be replaced by inferences "from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide" evidence of his crime. *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir.1979). A review of the facts alleged in the affidavit reveals only a minimal connection between the instrumentalities of the robbery and the residence, namely, the fact that the car was located in front of the house and that the police somehow knew that the owner's white male son was a frequent driver of the vehicle. The document, however, most notably fails to indicate whether this individual resides at or frequents the searched address. The affidavit provides no particular description of any of the perpetrators of the robbery and therefore makes no effort to establish probable cause to believe that any particular person committed the offense. The perpetrators were described only as white males. The identified car, registered to a white female, was seen being driven only by a white female. No suspicious activity was observed at 371 Elm Street and the affidavit does not link any white males to that address. A commonsense reading of the affidavit indicates that the chain of reasoning lacks an essential link connecting the car to the house. The judge who issued the warrant could not conjure up the necessary link from the insubstantial evidence presented to him.

Neither the parties nor the court have found any case precisely on point. Of the cases cited by the defendant, *United States v. Taylor,* 599 F.2d 832 (8th Cir.1979), is the most persuasive. In *Taylor,* the evidence supporting a probability of finding the illegal guns at the address searched was much greater than of finding evidence of the AAA robbery in the 371 Elm Street residence, yet the court found the warrant deficient. Federal agents in *Taylor* observed the defendant and his alleged co-conspirator walking to and from the house, and they were even spied carrying packages. The warrant was nevertheless found to be invalid because of an insufficient nexus between the address and the contraband; the suspects were never seen actually entering or leaving the abode. *Id.* at 836–37; *also see State v. DeChamplain,* 179 Conn. 522, 427 A.2d 1338 (1980).

The cases cited by the government are for the most part distinguishable in that the courts in those cases found probable cause to search a suspect's residence and it was clearly set forth in the affidavits that the location was the suspect's residence. It is admittedly proper in many cases to assume that a criminal would hide evidence of his crime at his residence. The affidavit in this case does not allege that a robbery suspect lived at 371 Elm Street, visited there frequently or was seen there during the August 10, 1982 surveillance. *See United States v. McNally,* 473 F.2d 934 (3d Cir. 1973). Moreover, even with searches of suspects' residences, courts have required a showing of probability that the items sought will be found in a residence. *See United States v. Lockett,* 674 F.2d 843 (11th Cir.1982); *United States v. Charest,* 602 F.2d 1015 (1st Cir.1979); *United States v. Lucarz,* 430 F.2d 1051 (9th Cir.1970); *United States v. Flanagan,* 423 F.2d 745 (5th Cir.1970).

The government is similarly unpersuasive in relying on *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978), to argue that the search of a premises owned by an uninvolved third party was valid. The government misses the point. In *Zurcher,* the Court found that there was probable cause to believe that certain pictures would be found in the offices of the Stanford Daily and therefore the search was proper. No such probable cause has been shown in this case.

The court recognizes that in assessing probable cause, judges "are not to be confined by niggardly limitations or by restrictions on the use of their common sense . . . ." *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). Nevertheless, the distinction between probable cause and mere conjecture still exists. The grounds for a search must satisfy objective standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests and probable cause. *Torres v. Puerto Rico,* 442 U.S. 465, 471, 99 S.Ct. 2425, 2429, 61 L.Ed.2d 1 (1979). Although there was a chance that evidence of the robbery would be found within 371 Elm Street, such conjecture does not rise to the level of probable cause to believe that the evidence was in fact secreted there. *State v. DeChamplain, supra,* 179 Conn. at 533, 427 A.2d 1338.

The motion to suppress is accordingly GRANTED.

## II. *MOTION TO DISMISS*

Defendant has also moved to dismiss the second count of the indictment charging him with a violation of 18 U.S.C.App. § 1202(a).[3] The government concedes that it cannot show that the firearm in question ever travelled in interstate commerce. Instead, the government will seek to establish the necessary interstate nexus by showing

---

**3.** 18 U.S.C.App. § 1202(a) provides in relevant part:

  (a) Any person who—

    (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who

receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

that the firearm "affected commerce through the process of its manufacture" in that the firearm was manufactured within Connecticut by a corporation national in scope and its manufacturing process affected interstate commerce. Government's Bill of Particulars.

■ To prove a violation of § 1202(a), the government must show that Mr. Travisano possessed a firearm that is or was "in commerce or affecting commerce." 18 U.S.C.App. § 1202(a); *Scarborough v. United States,* 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Although the Supreme Court in *Scarborough v. United States, supra,* stated that it saw "no indication that Congress intended to require any more than [a] minimal nexus [with interstate commerce]," the Court was unwilling to do away with the nexus requirement entirely. *Id.* 431 U.S. at 575, 97 S.Ct. at 1969. Congress's insertion of the words "in commerce or affecting commerce" should not be ignored despite the power Congress may have to pass a statute without this requirement. Congress simply passed a narrower statute than it could have. *United States v. Bass, supra,* 404 U.S. at 345–46 n. 14, 92 S.Ct. at 521–522 n. 14.

Although, as the government argues, the Supreme Court may be minimizing the importance of the interstate commerce requirement, the Court has yet to eradicate it entirely. In addition, neither party has succeeded in finding a case that has adopted the government's novel theory by requiring less than a showing that the firearm at some point after its manufacture travelled interstate. Absent such authority and given the Supreme Court's statements to date, this court deems it inappropriate to further eviscerate the interstate commerce requirement.

■ Because the government will not be able to prove that the firearm manufactured and possessed in Connecticut travelled in interstate commerce, the motion to dismiss count two of the indictment is GRANTED.

It is So Ordered.