[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By motion dated March 5, 2001, the defendant moves to suppress any and all evidence obtained as a result of a search of his home on September 11, 2000, pursuant to a warrant issued on September 8, 2000. In support of his motion, the defendant cites the fourth, fifth, sixth andfourteenth amendments to the United States constitution; Article First, §§ 78 and 9, of the Constitution of Connecticut; General Statutes §§ 29-302, 29-311[1], 54-2a and 54-33 et seq. Practice Book §41-12 et seq. State v. DeChamplain, 179 Conn. 522 (1980) and its progeny; and the inherent authority of the court.
The warrant sought permission to search the defendant's residence for evidence of child pornography in the form of correspondence by mail or computer; evidence of promoting a minor in an obscene performance in the form of correspondence by mail or computer; visual depictions, material data or property that depict child pornography in a variety of forms, devices used to view visual depictions of child pornography; evidence of payment to Datacom Services; evidence of unique customer number assigned to sroesing@snet.net: evidence of Internet visits to undercover websites, notations of any password controlling access to computer operating system, computer files or websites. The application alleged that the foregoing evidence constituted evidence of or that the defendant participated in the commission of the offenses of "Criminal Attempt — 53a-49/Possessing Child Pornography — 53a-196d, Possessing Child Pornography — 53a-196d."
As a result of the execution of the warrant a number of video tapes and computer related items were seized. Thereafter, the defendant was arrested and charged with fifty counts of possession of child pornography in violation of General Statutes § 53a-196d and three counts of importing child pornography in violation of General Statutes § CT Page 974953a-196c.
The defendant now moves to suppress the seized evidence on the grounds that the search warrant did not contain sufficient facts for a determination of the probable location of the items sought. Therefore, he argues, the warrant was insufficient on its face for lack of probable cause.
The law to apply when considering the validity of a search warrant is well established. Most recently, the Supreme Court addressed the standards of upholding a search warrant challenged for insufficient probable cause in State v. Respass, 256 Conn. 164, 172-73 (2001). First, the court set forth the review of the magistrate's action in issuing the warrant.
 We uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . [T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories.
(Internal quotation marks omitted.) Id., 172.
The court then addressed the issue of probable cause:
 Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . In determining the existence of probable cause to search, the issuing magistrate assesses all of the CT Page 9750 information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . We view the information in the affidavit in the light most favorable to upholding the magistrate's determination of probable cause. . . . In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the issuing judge's determination. Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred.
(Citation omitted; internal quotation marks omitted.) Id., 173.
The following facts were set forth in the warrant to establish probable cause that items connected with the crimes of attempting to possess and possessing child pornography and transporting child pornography would be found in the defendant's home. In December 1999, the Dallas, Texas police seized a website containing child pornography, and the seizure included customer listing of email addresses and credit card numbers used to purchase access. One of the email accounts was sroesing@snet.net with the defendant's home address. At some time not specified in the warrant, the Dallas police department set up an undercover website that would allow individuals to request illicit materials, including child pornography. The Dallas police sent unsolicited emails to Connecticut residents, including the defendant, who were known to have purchased access to the seized website that contained child pornography. The unsolicited email sent to the defendant invited him to visit the undercover site.
On April 17, 2000, an individual using sroesing@snet.net visited the undercover website and made a request for "Preteen Lolitas." The term "Preteen Lolitas" refers to children under the age of sixteen engaged in prohibited sexual activity or depicted as engaging in sexually prohibited activity. The undercover website responded with an email that day referring him to a local provider who could supply him with the requested material. He was assigned a unique customer number to use. The local provider was in fact the Connecticut state police computer crimes unit/ICAC task force.
On April 19, 2000, the sroesing@snet.net sent an email to the local provider indicating an interest in adult material. On April 20, 2000, the Connecticut state police acted as the local provider and sent an email to CT Page 9751sroesing@snet.net requesting more specificity as to his interest and advising him that the products supplied are banned and illegal in the U.S. and Canada. It also informed him to use his confidential customer number in future correspondence.
On April 24, 2000, sroesing@snet.net responded to the April 20th email, writing, "I am interested in preteen sexually (sic) orientated (Sic) material either floppy, CD or video format (sic). Customer 138134544." On April 26, 2000, sroesing@snet.net sent another email to the local provider which read, "Hi, Are you still taking orders. Thanks." On April 27, 2000, the Connecticut state police acting as the local provider sent sroesing@snet.net a description of the available media and requested that he select a product code and remit payment to "Datacom Services" in Wallingford. Upon receipt of payment, another email would be sent regarding delivery.
On June 21, 2000 an envelope with the defendant's name and address on a return label was delivered to Datacom's post office box. Enclosed was a money order payable to Datacom in the amount of $99.85. Also enclosed in the envelope was a piece of paper indicating the customer number assigned to sroesing@snet.net and a list of letters, numbers D1-202, D1-304, and D1-309, and dollar amounts totalling $99.85.[2] The letters and numbers were product codes provided to sroesing@snet.net in the order form.
On July 2, 2000, an email from sroesing@snet.net to the undercover local provider was sent and set forth the following: "Hi I want to cancel my order with your company. I will have to live with whatever your refund policy is. In any event I wish to cancel my order. Customer #13813454."
On July 3, 2000, the Connecticut state police confirmed the home address, telephone number and email address as the defendant's and his wife's. On August 2nd and August 3, 2000, the Connecticut state police confirmed that the defendant was the only user of the computer at the defendant's home.
The defendant claims that the warrant is defective because: 1) it contains no allegations that he downloaded or received child pornography; and 2) it contains information that is stale. He further argues that the constitution of Connecticut provides higher protection of homes than the Fourth amendment to the United States constitution. Under both the constitutions of the United States and Connecticut, persons are entitled to be secure, inter alia, in their houses. Under theFourth
amendment to the United States constitution, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Under article first, § 7, of the constitution CT Page 9752 of Connecticut, "no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." In State v.Geisler, 222 Conn. 672 (1992), our Supreme Court held that the constitution of Connecticut, but not the United States, requires that "evidence derived from an unlawful warrantless entry into the home be excluded unless the taint of the illegal entry is attenuated by the passage of time or intervening circumstance." Id. 690. Nothwithstanding the defendant's reliance on Geisler here, the court is not persuaded that its holding applies to a search authorized by a warrant under the facts in this case.
More troubling to the court is the issue of probable cause as to the location of the items sought. The warrant contains no facts for the issuing judge to reasonably infer that the defendant downloaded or ordered any material from the Texas website that was seized in December 1999. While there are sufficient facts set forth to infer that the defendant placed an order for child pornography in June 2000 from an undercover website, the warrant also alleges that the defendant cancelled the order. There are no facts from which the issuing judge could infer that the defendant actually received child pornography from the website operated by the state police.
The state argues that there are sufficient facts to support a finding of probable cause as to the crime of attempted possession of child pornography. Accordingly, no evidence of downloading or actual receipt of pornography was necessary for a finding of probable cause.
Based upon the facts in the warrant and the reasonable inferences that the issuing judge could have made from those facts, the court agrees with the state that as to the crime of attempted possession of child pornography probable cause existed to search the defendant's home for the evidence specified in the warrant. The warrant sought the seizure of devices, correspondence, evidence of payment, passwords and other evidence related to the crime of attempted possession of child pornography. The fact that it also sought the seizure of evidence related to the crime of possession of child pornography, i.e. child pornography, does not invalidate the warrant or require the suppression of that evidence. See State v. Olah, 60 Conn. App. 350, 357 (2000) (plain view doctrine would allow seizure).
The defendant also argues that the warrant is defective because the information it contains is stale. The Supreme Court in State v. Respass, supra, 256 Conn. 180, addressed a claim of stale allegations in a warrant seeking the seizure of narcotics at a residence:
CT Page 9753 It is undisputed that [t]he determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime . . . of the criminal . . . of the thing to be seized . . . of the place to be searched . . . etc.
(Internal quotation marks omitted.)
Later the court noted,
 [f]urthermore, a warrant is less likely to be stale when a defendant's home is a "secure operational base" rather than merely a "criminal forum of convenience."
Id.
The nature of the crimes alleged, that is, attempted possession of child pornography and possession of child pornography here is such that the evidence sought "is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched." United Statesv. Craig, 861 F.2d 818, 823 (5th Cir. 1988); see also United States v.Lacy, 119 F.3d 742, 745-46 (9th Cir. 1997), cert. denied, 523 U.S. 1101,118 S.Ct. 1571, 140 L.Ed.2d 804 (1998). The allegations in this warrant allege the use of the computer and internet for access to child pornography. The various computer related devices including passwords are likely to be kept at the defendant's home for a period of time. The defendant placed an order for child pornography in June 2000; the warrant was signed on September 9, 2000. The court finds that the allegations are not so dated as to preclude a finding of probable cause.
For the foregoing reasons, the motion to suppress is denied.
DiPentima, J.