## STATE OF CONNECTICUT *v.* FRANCIS ARPIN

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued April 1— decision released August 24, 1982

*John M. Massameno,* assistant state's attorney, with whom, on the brief, were *Harry S. Gaucher,* state's attorney, and *Thomas P. Cadden* and *Ernest J. Diette, Jr.,* assistant state's attorneys, for the appellant (state).

*Joette Katz,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellee (defendant).

SPEZIALE, C. J. The defendant, Francis Arpin, was charged by information with possession of marihuana with intent to sell in violation of General Statutes § 19-480a (b), with possession of marihuana in violation of General Statutes § 19-481 (c), and with illegal cultivation of marihuana in violation of General Statutes § 19-453 (a). The defendant moved to suppress the use as evidence of marihuana and other material seized pursuant to a search warrant from or near his and Lorraine Arpin's residence located on Goshen Road in the Moosup section of Plainfield. As grounds for suppression the defendant alleged that the affidavit in support of the application for the search warrant did not establish probable cause on which the warrant properly could issue. The trial court granted the defendant's motion to suppress. Thereafter, the defendant's motion to dismiss the charges against him was granted. From that judgment the state, with the permission of the trial court as required by General Statutes § 54-96, has appealed.[1]

On appeal, the state claims that it was error to suppress the evidence seized under the challenged warrant because the supporting affidavit contained sufficient information to establish probable cause. The state concedes that the supporting affidavit con-

[1] Lorraine Arpin was also charged by information with the same charges as those brought against Francis Arpin. The case involving Lorraine Arpin was assigned Superior Court, Judicial District of Windham, Docket No. CR 11-36957 and the case involving Francis Arpin was assigned No. CR 11-36958. In both cases the defendants' motions to suppress and, thereafter, to dismiss were granted. Furthermore, the state was granted permission to appeal in both cases. The state's appeal, however, although captioned as "State v. Francis Arpin et al." referred only to the case with Docket No. CR 11-36958, that is, the case involving Francis Arpin. Following oral argument before this court, the state conceded that the appeal was taken only in the case involving Francis Arpin. Thus, Lorraine Arpin is not a party in the appeal before us.

tained some information which was obtained in an unconstitutional manner, which information, therefore, could not be used as a basis upon which the warrant could be issued. The state maintains, however, that there was sufficient other information in the affidavit to establish probable cause independently of the tainted information.

In the application for the search and seizure warrant, the affidavit[2] of the state police disclosed, inter alia, the following facts: On October 15, 1979,

[2] The application, the affidavit and search and seizure warrant were as follows:

"AFFIDAVIT AND APPLICATION
SEARCH AND SEIZURE WARRANT

STATE OF CONNECTICUT
SUPERIOR COURT
Z-79-0428-E

TO: A Judge of the Superior Court

The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Marihuana, six boxes marked Royal Crown—Apples bearing U.P.S. shipping labels w/initials KBB on the back and the #627 on the bottom. Labels addressed to Mrs. Lorraine Arpin Goshen Rd. Box 389 Moosup, Ct. 06354 is possessed, controlled, designed or intended for use as a means of committing the crime of Poss of Marihuana with intent to sell 19-480a(b).

And is within or upon a certain person, place, or thing, to wit 2 story residence, color blue, white trim and partial stucco finish, greenish roof shingles, 6 cement stucco color porch pillars in front, yellow mail box W/#389 across street. Located Goshen Rd. Off Rt 14 (main St) Moosup section Plainfield, Ct. Left side approx. 2/10 mi. from Jct. of Rt 14. 1st. home on left from Jct Brunswick Ave. Moosup, Ct.

And that the facts establishing the grounds for issuing a Search and Seizure Warrant are the following

1. That Affiant Tpr. Kerry B. Butler and Affiant Tpr. Mike Meehan are members of the Conn. State Police Dept. and have a combined police experience of approx. 20 Yrs. That both affiants are presently assigned to the Statewide Narcotics Task Force East hereafter referred to the SNTF-E.

2. On 10-15-79 Special Agent John Albano of the Federal Drug Enforcement Agency Hartford, Ct. hereafter referred to as D.E.A.

one of the affiants, Trooper Kerry B. Butler, was informed by a special agent of the Hartford office of the federal drug enforcement agency (DEA) that, according to information received from a special agent in the Chicago office of the DEA, six boxes containing marihuana were en route to the Arpin residence in Moosup via United Parcel Service (U.P.S.). These parcels were being allowed to proceed to the U.P.S. terminal in Hartford where they would be held for affiant Butler. Also on October 15, 1979, Butler and the other affiant, Trooper Mike Meehan, observed the residence to which the boxes were reported to be addressed and

contacted affiant Butler and related that S.A. Terry Valentine of D.E.A. Chicago office had six boxes of Marihuana enroute via United Parcel Service, hereafter referred to as U.P.S. from Chicago to the ARPIN residence Moosup, Ct., the above described place to be searched. Agent Albano related to affiant Butler that the six boxes of Marihuana would be allowed to proceed to the Hartford U.P.S. terminal where it would be held for affiant Butler and Agent Albano.

3. On 10-15-79 these affiants viewed the above described place to be searched for the description utilized in this application. Parked in the driveway was observed by the affiants the following vehicles: Ct. Comm. B70366 a green stake body truck, Ct. Pass. WX 6985 a Gray Datsun and Ct. Pass. VT 6899 on a Blue Chevy. A check of the Conn. M.V.D. records by these affiants show Ct. B70366 listed to Francis A. Arpin Goshen Rd. Box 389 Rfd 1 Moosup, Ct. on a 1967 Chev color green Body Stake.—Ct. WX-6985 listed to Francis A. Arpin Box 389 RFD 1 Moosup, Conn. on a 1978 Datsun 2dr Sed color Gray. — Ct. VT-6899 listed to Lorraine M Arpin of Goshen Rd. Box 389 Moosup Conn on a 1969 Chev hardtop color Blue.

4. On 10-23-79 Affiant Meehan made a check with the Conn. Light & Power Co for services received at Box 389 Goshen Rd. Moosup, Conn. and was informed that service, started on 06-11-79, is in the name of Francis R. Arpin of Box 389 Goshen Rd. Moosup, Conn. with a former address of South Rd. Fitchville, Conn.

5. On 10-23-79 affiant Butler ans [sic] S. Albano and S.A. Mike Meyrick met with John Gilday Chief of Loss prevention, U.P.S. Locus St. Hartford, Conn. and Affiant Butler took into possession six cardboard boxes marked Crown Royal—Apples with U.P.S. adress labels made out as follows:

One from F. Arpin 5701 North Sheraton Rd. Chicago, Ill. 60660 to Mrs. Lorraine Arpin Goshen Rd. Box 389 Moosup, Conn. 06354,

corroborated through motor vehicle registrations and utility records that Francis and Lorraine Arpin resided at that location.

On October 23, 1979, affiant Butler and two DEA agents went to the Hartford U.P.S. terminal and Butler took into possession six cardboard boxes marked Royal Crown Apples and addressed to Lorraine Arpin at the address on Goshen Road. Butler marked each address label with his initials and badge number. At this time Butler noted a strong odor coming from the boxes which he knew from four years of experience in drug enforcement to be the odor of marihuana. At some later point affiant

One from Steven Sage 5701 North Sheraton Rd. Chicago, Ill. to Lorraine Arpin Goshen Rd. Box 389 Moosup, Ct. 06354, One from F. Arpin 5701 North Sheraton Rd. Chicago, Ill. to Mrs. Lorraine Arpin Goshen Rd. Box 389 Moosup, Ct. 06453, another addressed the same, another addresses [sic] from Steven Sage 5701 North Sheraton Rd. Chicago, Ill. to Mrs. Lorraine Arpin Goshen Rd. Box 389 Moosup, Ct. 06354 and last addressed the same.

6. On 10-23-79 affiant Butler placed on the back corner of each adress [sic] label the initials KBB and on the bottom of each box the # 627 which is Affiants [sic] Badge Number.

7. On 10-23-79 affiant Butler, S.A. Albano transported the above described property to be searched for to the U.P.S. terminal on Old Rt 2 (Norwich Rd) Fitchville, Ct. for the U.P.S. to complete delivery under Affiants [sic] Butler's control.

8. On 10-23-79 Affiant Butler noted at the time of picking up the above described property to be search [sic] for, a stong [sic] odor coming from the box which affiant Butler knowns [sic] from approx. four years in the enforcement of Narcotics and Drug laws in the State of Conn. and from numerious [sic] investigations of Marihuana that the odor was the odor given off by Marihuana.

9. On 10-23-79 affiant Mechan opened one of the above metioned [sic] boxes to be searched for and observed green plant material and at this time conducted a field test using a Duquenois reagent field test and noted a positive reaction that being a color change to blue.

10. On 10-23-79 S.A. Meyrick related to these affiants that the above described property to be searched for was delivered to the above place described to be searched (Arpin residence) via U.P.S. truck and driver and that S.A. Meyrick was present when the delivery was made. That Lorraine Arpin accepted the above property to be searched for and signed a receipt prepared by U.P.S. for

Meehan opened one of the boxes, observed green plant material and performed a field test which confirmed the presence of marihuana.

The boxes were delivered to the Goshen Road address. Lorraine Arpin accepted delivery and signed a receipt. As related to the affiants by a DEA agent present at the time, the defendant remarked that the delivery was late and that he was about ready to put a tracer on the shipment because it was only supposed to have taken two or three days.

delivery. That Francis Arpin stated that 'They (U.P.S.) were late. About ready to put a tracer on it (shipment). Chicago said it would only take two or three days.'

The undersigned has not presented this application in any other court or to any other judge.

Wherefore the undersigned prays that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.

Signed at Norwich, Connecticut, this 23 day of Oct., 1979.
/s/ Tpr. Kerry B. Butler

Signed at Norwich, Connecticut, this 23 day of Oct., 1979.
/s/ Tpr. M. J. Meehan

JURAT Subscribed and sworn to before me this 23rd day of October, 1979.
/s/ Harry W. Edelberg"

"SEARCH AND SEIZURE WARRANT

STATE OF CONNECTICUT
SUPERIOR COURT

The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the undersigned, a Judge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said Application, and (b) finds that said Affidavit establishes grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said Affidavit, the under-

On the basis of the above facts, a search and seizure warrant was issued on October 23, 1979, by a judge of the Superior Court, *Edelberg, J.,* for the seizure of the six boxes marked Royal Crown Apples and containing Butler's identifying marks. This warrant was executed the same day and the boxes were found outside the back door of the Arpin residence. Other materials which were in plain view, such as plastic bags containing marihuana residue and numerous marihuana plants growing on the property, were also seized. Because the boxes were found outside the Arpin residence, a second warrant was sought and obtained from the court,

signed finds that there is probable cause for the undersigned to believe that the property described in the foregoing Affidavit and Application is within or upon the person, if any, named or described in the foregoing Affidavit and Application, or the place or thing, if any, described in the foregoing Affidavit and Application, under the conditions and circumstances set forth in the foregoing Affidavit and Application, and that, therefore, a Search and Seizure Warrant should issue for said property.

NOW THEREFORE, by Authority of the State of Connecticut, I hereby command any Police Officer of a regularly organized police department or any State Policeman to whom these presents shall come within ten days after the date of this warrant to enter into or upon and search the place or thing described in the foregoing Affidavit and Application, to wit: 2 story residence, color blue, white trim and partial stucco finish, greenish roof shingles, 6 cement stucco color porch pillars in front, yellow mail box W/#389 across street. Located Goshen Rd. Off Rt 14 (main st) Moosup section Plainfield, Ct. Left side approx. 2/10 mi from Jct. of Rt 14. 1st. home on left from Jct for the property described in the foregoing Affidavit and Application, to wit: Marihuana, six boxes marked Royal Crown— Apples bearing U.P.S. shipping labels w/initials KBB on the back and the # 627 on the bottom. Labels addressed to Mrs. Lorraine Arpin Goshen Rd. Box 389 Moosup, Ct. 06354 and upon finding said property to seize the same, take and keep it in custody until the further order of the court, and with reasonable promptness make due return of this warrant accompanied by a written inventory of all property seized.

Signed at Norwich, Connecticut, this 23rd day of October, 1979.
/s/ Edelberg, J."

*Goldberg, J.,* to search the house; and further materials from the house, including various plastic bags containing marihuana residue and a scale, were seized.[3]

The state concedes that opening one of the boxes in order to conduct a field test on its contents was unconstitutional and that the resulting information, which was contained in paragraph nine of the supporting affidavit, could not be used to support a finding of probable cause. The state maintains, however, that there was sufficient other information in the supporting affidavit to find probable cause independently of the taint of the information in paragraph nine. The state contends, therefore, that the trial court, *Conway, J.,* erred in granting the defendant's motions to suppress and to dismiss.

The rule upon which the state relies is commonly referred to as the independent source rule. In often quoted language, Justice Powell has explained that "[t]he independent-source rule has as much vitality in the context of a search warrant as in any other. . . . The obvious and well-established corollary is that the inclusion in an affidavit of indisputably tainted allegations does not necessarily render the resulting warrant invalid. The ultimate inquiry on a motion to suppress evidence seized pursuant to a warrant is not whether the underlying affidavit contained allegations based on illegally obtained evidence, but whether, putting aside all tainted allegations, the independent and lawful information stated in the affidavit suffices to show probable cause." *United States* v. *Giordano,* 416

---

[3] The materials seized under the second warrant were also suppressed by the trial court because the validity of the second warrant depended upon the validity of the first.

U.S. 505, 554–55, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974) (Powell, J., concurring in part and dissenting in part).

The rule was recognized by the federal courts prior to *Giordano;* see *United States* v. *Giordano,* supra, 555; *United States* v. *McHale,* 495 F.2d 15, 17 (7th Cir. 1974); *United States* v. *Koonce,* 485 F.2d 374, 379 (8th Cir. 1973); *United States* v. *Tarrant,* 460 F.2d 701, 703–704 (5th Cir. 1972); *United States* v. *DePugh,* 452 F.2d 915, 921 (10th Cir. 1971), cert. denied, 407 U.S. 920, 92 S. Ct. 2452, 32 L. Ed. 2d 805, reh. denied, 409 U.S. 898, 93 S. Ct. 101, 34 L. Ed. 2d 157 (1972); *Howell* v. *Cupp,* 427 F.2d 36, 38 (9th Cir. 1970); *James* v. *United States,* 418 F.2d 1150, 1151–52 (D.C. Cir. 1969); *United States* v. *Sterling,* 369 F.2d 799, 802 (3d Cir. 1966); *Anderson* v. *United States,* 344 F.2d 792, 794 (10th Cir. 1965); *United States* v. *Paroutian,* 319 F.2d 661, 663 (2d Cir. 1963); *Chin Kay* v. *United States,* 311 F.2d 317, 321–22 (9th Cir. 1962); *Parts Mfg. Corporation* v. *Lynch,* 129 F.2d 841, 842–43 (2d Cir.), cert. denied, 317 U.S. 674, 63 S. Ct. 79, 87 L. Ed. 541 (1942); *United States* v. *Epstein,* 240 F. Sup. 80, 82–83 (S.D. N.Y. 1965); and remains widely accepted at this time. See *United States* v. *Tucker,* 638 F.2d 1292, 1298–99 (5th Cir.), cert. denied, 454 U.S. 833, 102 S. Ct. 132, 70 L. Ed. 2d 111 (1981); *United States* v. *Agapito,* 620 F.2d 324, 338 (2d Cir.), cert. denied, 449 U.S. 834, 101 S. Ct. 107, 66 L. Ed. 2d 40 (1980); *United States* v. *Korman,* 614 F.2d 541, 547 (6th Cir.), cert. denied, 446 U.S. 952, 100 S. Ct. 2918, 64 L. Ed. 2d 808 (1980); *United States* v. *Saitta,* 612 F.2d 205, 208 (5th Cir.), cert. denied, 446 U.S. 910, 100 S. Ct. 1838, 64 L. Ed. 2d 263 (1980); *United States* v. *Williams,* 594 F.2d 86, 95–96 (5th Cir. 1979), cert. denied, 449 U.S. 1127,

101 S. Ct. 946, 67 L. Ed. 2d 114 (1981); *United States* v. *Romero,* 585 F.2d 391, 395 (9th Cir. 1978), cert. denied, 440 U.S. 935, 99 S. Ct. 1278, 59 L. Ed. 2d 492 (1979); *United States* v. *Marchand,* 564 F.2d 983, 993–94 (2d Cir. 1977), cert. denied, 434 U.S. 1015, 98 S. Ct. 732, 54 L. Ed. 2d 760 (1978); *United States* v. *Watts,* 540 F.2d 1093, 1095 n.2 (D.C. Cir. 1976); *United States* v. *DiMuro,* 540 F.2d 503, 515 (1st Cir. 1976); *United States* v. *Hunt,* 496 F.2d 888, 894–95 (5th Cir. 1974); *United States* v. *Adames,* 485 F. Sup. 965, 970–71 (E.D.N.Y. 1980); *United States* v. *Cognato,* 408 F. Sup. 1000, 1005–1006 (D. Conn.), aff'd, 539 F.2d 703 (2d Cir. 1976), cert. denied, 430 U.S. 956, 97 S. Ct. 1603, 51 L. Ed. 2d 806 (1977). Moreover, although the United States Supreme Court has never expressly adopted the rule, virtually the same procedure was employed in *Franks* v. *Delaware,* 438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), to evaluate the consequences of a false statement in an affidavit. See *United States* v. *Strini,* 658 F.2d 593, 597 (8th Cir. 1981); *United States* v. *Whitney,* 633 F.2d 902, 908 (9th Cir. 1980), cert. denied, 450 U.S. 1004, 101 S. Ct. 1717, 68 L. Ed. 2d 208 (1981); *United States* v. *Federbush,* 625 F.2d 246, 252 (9th Cir. 1980); *Chin* v. *United States,* 622 F.2d 1090, 1092 (2d Cir. 1980), cert. denied, 450 U.S. 923, 101 S. Ct. 1375, 67 L. Ed. 2d 353 (1981). The independent source rule has been noticed previously by this court; *Dotson* v. *Warden,* 175 Conn. 614, 623–24, 402 A.2d 790 (1978); and we follow the rule in this case.

Employing the independent source rule in this case entails determining whether probable cause is established by the supporting affidavit excised of the illegally obtained information contained in paragraph nine. The question is not whether the

issuing judge actually found probable cause independently of the illegal information, but rather whether the affidavit, with the illegal information excised, is sufficient to support the finding of probable cause necessary for the warrant. The test employed, therefore, is objective, not subjective.

"In reviewing an affidavit for a search and seizure warrant we must ascertain whether the facts in the affidavit are sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant. *State* v. *Williams,* 169 Conn. 322, 326, 363 A.2d 72 (1975); *State* v. *Rose,* 168 Conn. 623, 627–28, 362 A.2d 813 (1975); *State* v. *Allen,* 155 Conn. 385, 391, 232 A.2d 315 (1967)." *State* v. *DeChamplain,* 179 Conn. 522, 527–28, 427 A.2d 1338 (1980). In *State* v. *DeChamplain,* supra, 528–29, we stated that "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction; . . . *and* (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." See *State* v. *Ferguson,* 185 Conn. 104, 111, 440 A.2d 841 (1981).

In this case, the dispositive consideration is whether the affidavit, with paragraph nine excised, establishes probable cause to believe that the boxes to be seized at the Arpin residence contained marihuana.[4] The affidavit[5] contains two pieces of information which would contribute to such a finding of

[4] There is no dispute that the affidavit establishes probable cause to believe that the boxes to be searched for and seized were at the Arpin residence.

[5] See footnote 2, supra.

probable cause. The first, contained in paragraph two of the affidavit, is the report by a Chicago DEA agent, as relayed to the affiants by a Hartford DEA agent, that six boxes containing marihuana were in transit to the Arpin residence via U.P.S. The second piece of information, contained in paragraph eight of the affidavit, is affiant Butler's detection of the odor of marihuana coming from one of the boxes at the U.P.S. terminal. We conclude that this information, in the context of the whole affidavit, does establish the requisite probable cause.

The information in paragraph two of the affidavit, that according to a Chicago DEA agent six boxes of marihuana were en route to the Arpin residence, by itself is merely conclusory and does not provide the issuing judge with any of the underlying circumstances from which the DEA agent concluded that there was marihuana in the boxes;[6] however, the information contained in paragraph eight, that affiant Butler detected the odor of marihuana from

---

[6] Indeed, the affidavit does not even indicate whether the Chicago DEA agent's report was based on personal knowledge or on a tip from an informer. The failure to provide such basic information prevents the issuing judge from determining whether the report in paragraph two was obtained legally, if based on the DEA agent's personal knowledge or, if based on information from an informant, whether the informant was reliable or the informant's information was obtained in a credible manner. See *Aguilar* v. *Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *State* v. *Ferguson,* 185 Conn. 104, 112, 440 A.2d 841 (1981). In certain cases, the lack of such information may be overcome by other information in the affidavit which sufficiently corroborates the initial information. See *Spinelli* v. *United States,* 393 U.S. 410, 415–16, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969). Although the conclusion we reach in this decision makes it unnecessary for us to determine whether the information in paragraph two was so corroborated, there is authority which would suggest that it was. See *Draper* v. *United States,* 358 U.S. 307, 313–14, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959); but see *Whiteley* v. *Warden,* 401 U.S. 560, 566–68, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971); *Spinelli* v. *United States,* supra, 426–27 (White, J., concurring).

one of the boxes to which he had been directed by the DEA report, does provide sufficient information from which the issuing judge could find probable cause to believe that there was marihuana in the boxes to be searched.

It is well established that the detection of the odor of an illegal substance alone may be sufficient to establish probable cause so long as the affiant is qualified to know the odor and the odor of the illegal substance is sufficiently distinctive to be identified. See *Johnson* v. *United States*, 333 U.S. 10, 13, 68 S. Ct. 367, 92 L. Ed. 436 (1948). The affidavit in this case sets out the essential element that affiant Butler, who was assigned to the statewide narcotics taskforce east and had four years of experience in drug enforcement, is qualified to know the odor of marihuana.[7] Furthermore, it is generally recognized that marihuana does have a distinctive odor by which it may be identified. *United States* v. *Bronstein*, 521 F.2d 459, 461 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S. Ct. 1121, 47 L. Ed. 2d 324 (1976); see generally annot., 5 A.L.R.4th 681.

Paragraph eight of the affidavit, therefore, in the context of the whole affidavit (minus paragraph

[7] It is suggested by the defendant that the trial court should have taken testimony from affiant Butler to confirm his stated ability to detect the odor of marihuana. It is well established in Connecticut, however, that "[t]he issuing judge, in determining whether probable cause exists, must consider only the information contained in the affidavit. General Statutes § 54-33a (c); *State* v. *Williams*, 170 Conn. 618, 628, 368 A.2d 140, cert. denied, 429 U.S. 865, 97 S. Ct. 174, 50 L. Ed. 2d 145 (1976); see also *State* v. *Allen*, 155 Conn. 385, 391, 232 A.2d 315 (1967); *State* v. *DeNegris*, 153 Conn. 5, 9, 212 A.2d 894 (1965). The consideration of other information is improper. *State* v. *Williams*, [supra]. In considering the sufficiency of the affidavit, we confine ourselves 'to the facts which appear on the face of the affidavit or which properly may be inferred therefrom.' Id., 629." (Footnote omitted.) *State* v. *DeChamplain*, 179 Conn. 522, 530-31, 427 A.2d 1338 (1980).

nine) establishes probable cause to believe that marihuana was contained within the boxes for which the warrant was issued. In view of this conclusion, it was error for the trial court to grant the defendant's motion to suppress and his subsequent motion to dismiss.

There is error, the judgment dismissing the information is set aside, and the case is remanded with direction that the defendant's motion to suppress be denied and for further proceedings.

In this opinion the other judges concurred.