[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO SUPPRESS
The defendant, Robert W. Doyle, was arrested on a warrant dated August 24, 1989 and now stands charged in a two count information with illegally dispensing controlled substances in violation of Section21a-277 and dispensing controlled substances more than six months after the date of the prescription in violation of Section 21a-249(h) of the General Statutes. The defendant has filed a motion to suppress all evidence seized at his place of business on the grounds that the property was illegally seized without a, warrant, it was seized without probable cause, the warrant was insufficient on its face, it was illegally executed, the warrants were tainted by prior alleged seizures, and they were overbroad.
The defendant is a licensed pharmacist and the owner of Crutch MacDonald Corner Drug Store. On June 19, 1987, Department of Consumer Protection Drug Control Agent Alexandra S. Mathiasen performed a "routine scheduled pharmacy inspection of Crutch McDonald (sic) CT Page 4715 Corner Drug Store." Because of the large number of deficiencies noted, Agent Mathiasen scheduled another inspection to be performed in thirty days. When she returned to Crutch MacDonald to perform a reinspection on August 3, 1987, Agent Mathiasen was given two prescriptions from the non-controlled file for Olga Shaw, 208 New Litchfield Street, Torrington, Connecticut, claiming that prescriptions had been refilled more than five times and past the six month time period allotted by Conn. Gen. Stat.21a-249 (h).
As a result of Agent Mathiasen's examination of the two prescriptions, she interviewed Dr. Alfred J. Finn, the prescribing physician, and obtained a two page statement "concerning the legitimacy of these prescriptions" on August 5, 1988. Agent Mathiasen continued her investigation regarding Olga Shaw by reviewing medication from other pharmacies based upon prescriptions from Dr. Robert A. Scalice.
According to Agent Mathiasen, the Drug Enforcement Administration of the United States Department of Justice "selected Crutch McDonald (sic) Corner Drug Store" to conduct a "random audit", and "requested that [Agent Mathiasen] accompany their agent." On March 2, 1988, DEA Division Investigator Scott Collier presented part-time pharmacist Anthony Speck with a Federal Notice of Inspection of Controlled Premises form as required by 21 U.S.C. § 880 (b)(2). This form, in addition to providing written notice of Investigator Collier's inspection authority, doubles as a consent to search form. This form advised Mr. Speck, who is not the President, Manager or Owner of Crutch MacDonald Corner Drug Store of the following:
 1. You have a constitutional right not to have an administrative inspection made without an administrative inspection warrant.
2. You have the right to reuse to consent to this inspection.
 3. Anything of an incriminating nature which may be found may be seized and used against you in a criminal prosecution.
4. You shall be presented with a copy of this Notice of Inspection.
 5. You may withdraw your consent at any time during the course of the inspection.
Under the acknowledgement and consent portion of the form, Mr. Speck acknowledged that he was advised of these rights and that Investigator Collier identified himself and presented his credentials. However, while he consented to the inspection of the controlled premises, he was unable to fill out that part of the form which states:
 I hereby certify that I am the ___________________________ for the (President) (Manager) (Owner) premises described in this Notice of Inspection; . . .that I CT Page 4716 have authority to act in this matter and have signed this Notice of Inspection pursuant to my authority.
Thus, since Mr. Speck is neither the President, Manager nor Owner of Crutch MacDonald Corner Drug Store he did not fill in that section. Both Investigator Collier and Agent Mathiasen witnessed Mr. Speck as he signed the form.
Even though the defendant, who is the President, Manager and Owner of the pharmacy arrived "a short time later," he was never presented with this consent form, nor was he informed that such a form had been presented to Mr. Speck. Investigator Collier conducted an audit on selected controlled drugs and noted a shortage for two types of drugs. At the end of the day, Agent Mathiasen seized the originals of eight prescriptions for Olga Shaw, and again, had Mr. Speck sign the surrender form. She returned the original prescriptions to Mr. Speck on March 4, 1988.
Investigator Collier and Agent Mathiasen continued the audit on March 3, 1988. During this two-day audit, they also "noticed controlled substance prescriptions for Italo Scarpelli of Scottsdale, Arizona", prescribed by Dr. Francis Cornelio, which Agent Mathiasen found unusual.
As a result of this warrantless audit, Investigator Collier and Agent Mathiasen interviewed Olga Shaw on April 21, 1988. Mrs. Shaw stated that she had obtained each of her eight prescriptions and that Dr. Alfred J. Finn had authorized them. Agent Mathiasen, accompanied by Investigator Collier, visited Dr. Finn's office for a second time on April 29, 1988. Dr. Finn signed a second statement indicating that he never had prescribed medication for Olga Shaw. Based upon the foregoing, Agent Mathiasen applied for a search warrant to seize the eight prescriptions of Olga Shaw which had been seized and copied during the March 2 and 3, 1988 audit. The search warrant was signed by a judge of the superior court on May 23, 1988, and it was executed on the same day.
Investigator Collier and Agent Mathiasen interviewed Dr. Francis Cornelio on June 1, 1988. He stated that he had never authorized prescriptions for Italo Scarpelli at Crutch MacDonald Corner Drug Store. As a result Agent Mathiasen applied for a second warrant, requesting to search records for information regarding Mr. Scarpelli. The search warrant was signed by a judge of the superior court on June, 2, 1988, and it was executed on the same day.
Agent Mathiasen obtained a third warrant on December 13, 1988 authorizing the search of Crutch MacDonald Corner Drug Store for all prescriptions and the patient profile card for Olga Shaw. A warrant for the arrest of the defendant was signed on August 24, 1989.
 I
Copies of prescriptions dated August 28, 1984 for darvon and CT Page 4717 tenuate dospan were obtained by Agent Mathiasen on August 3, 1987. These copies were given voluntarily by the defendant's daughter, Rita Marie Doyle-Stano, the pharmacist in charge on that date. The original of these prescriptions had been found in the non-controlled file rather than in the controlled file where it should have been lodged.
Conn. Gen. Stat. 21a-261 authorizes agents to inspect records of controlled substances in pharmacies. In addition, the statute provides that the agent is "authorized and empowered to obtain and serve search warrants and arrest warrants." Conn. Gen. Stat. 21a-261 (d). When the objective of the intrusion is to gather evidence for a criminal prosecution, rather than to secure administrative compliance, then a warrant meeting the demands of full probable cause is required. See United States v. Lawson, 502 F. Sup. 158, 165 (D.Md, 1980); Michigan v. Tyler, 436 U.S. 499, 508 (1978).
When the "inspection" in question is not undertaken as a routine regulatory inspection, but rather a search undertaken because government officials have "cause to believe" they will find evidence of a crime, a search warrant is required. People v. Hedges, 112 Misc.2d 632,447 N.Y.S.2d 1007, 1012 (1984); See also United States v. Russo,517 F. Sup. 83
(E.D.Mich. 1981); United States v. Anile, 352 F. Sup. 14 (N.D.W. Va. 1973). In this case, Agent Mathiason was conducting a routine inspection on August 3, 1987 and not an investigation, and therefore no search warrant was required at that time. A statute which specifically authorizes warrantless inspections of records of controlled substances, Conn. Gen. Stat. 21a-261 provides in relevant part:
 (a) Every person required by section 21a-254 to prepare or obtain and keep records of controlled substances . . .shall, upon request of the commissioner of consumer protection and his authorized agents, permit said commissioner and his authorized agents at reasonable times to have access to and copy such records.
 (b) For the purposes of verification of such records and of the enforcement of this part, said commissioner and his agents, are authorized to enter, at reasonable times, any . . . pharmacy . . . and to inspect, with reasonable limits and in a reasonable manner, such. . . pharmacy. . .
Conn. Gen. Stat. 21a-261 (emphasis added). Section 21a-254 requires that pharmacies "shall keep records of all controlled substances . . .", Conn. Gen. Stat. 21a-254 (e), and ". . .such record of controlled substances shall be separately maintained apart from other drug records. . ." Conn. Gen. Stat. 21a-254 (f). Furthermore, "[a]ll records required by this chapter shall be kept on the premises of the registrant and maintained current and separate from other business records in such form as to be readily available for inspection by the authorized agent CT Page 4718 at reasonable times." Conn. Gen. Stat. 21a-254(h).
An agent must be permitted to have access to and copy "records of controlled substances," but the statutory scheme does not permit a general search. Rather, the statute limits inspections to records of controlled substances. This finding is not determinative of the issue, however. Had the prescriptions been properly filled, they would have been a proper subject for review and copying. It would be a bizarre holding to find that a pharmacist could avoid detection of illegal activity by intentionally misfiling prescriptions. The agent was authorized to examine these prescriptions and request copies.
 II
Other evidence was seized pursuant to search warrants dated May 23, 1988, June 2, 1988 and December 13, 1988. The warrants in question provide in pertinent part as follows:
May 23, 1988:
PRESCRIPTION DRUG NAME QUANTITY DATED PHYSICIAN NUMBER
496972 Darvon Compound-65 100 8-28-84 Finn 496973 Tenuate Dospan 100 8-28-84 Finn 33637 Tenuate Dospan 100 2-13-86 Finn 33638 Darvon Compound-65 100 2-13-86 Finn 35502 Danron Compound-65 100 12-02-86 Finn 35503 Tenuate Dospan 100 12-02-86 Finn 36663 Darvon Compound-65 100 6-06-87 Finn 36664 Tenuate Dospan 100 6-06-87 Finn
5. That on April 21, 1988, I Agent Mathiasen, and Drug Enforcement Administration Diversion Investigator Scott Collier spoke to Olga Shaw, 208 New Litchfield Street, Torrington, CT. After reviewing the above mentioned copies, Mrs. Shaw stated that she had obtained each of the prescriptions and any and all refills for these prescriptions. She further stated that Alfred J. Finn, M.D. 379 Prospect Street, Torrington, CT had been her physician and had authorized these prescriptions and the refills.
6. That, on April 29, 1988, I, Agent Mathiasen, and Diversion Investigator Collier obtained a statement from Dr. Finn. He stated that Olga Shaw is not and has never been his patient. He has no medical record indicating treatment nor personal recollection of prescribing medication for Olga Shaw. None of Dr. Finn's associates have ever treated Olga Shaw.
June 2, 1988:
3. That, while conducting a scheduled controlled substance audit of Crutch CT Page 4719 and McDonald Corner Drug Store with Federal Drug Enforcement Administration Diversion Investigator Scott Collier on March 1 and 2, 1988, I, Agent Mathiasen, and Investigator Collier noticed controlled substance prescriptions bore the practitioner's name Francis Cornelio of Winsted, CT. This audit period was from July 1, 1987 through March 1, 1988.
4. That I, Agent Mathiasen, know that Dr. Cornelio has retired from active practice and being familiar with his past prescribing habits, know that the quantities and frequency of filling of these controlled substance prescriptions was not in keeping with Dr. Cornelio's past prescribing habits.
5. That, on June 1, 1988, Senior Agent Strickland, Investigator Collier, and I, Agent Mathiasen visited Francis Cornelio, MD, at his residence, 35 Glendale Avenue, Winsted, CT and obtained a sworn, written statement that he has not prescribed any controlled substances for Italo Scarpelli of Scottsdale, AZ in the last three years. Dr. Cornelio stated that he knew Mr. Scarpelli as a pharmacist who owned a local pharmacy in the town of Winsted some years ago. Dr. Cornelio knows that Mr. Scarpelli is now retired and lives a portion of the year in Scottsdale, AZ.
6. That on May 23, 1988, a Search and Seizure Warrant was obtained for controlled substance prescriptions for patient Olga Shaw allegedly authorized by Alfred Finn, MD, of Torrington, CT. However, Dr. Finn gave a sworn statement that these prescriptions had never been authorized by himself. These prescriptions had been filled at Crutch and McDonald Corner Drug Store.
December 13, 1988:
4. That, on March 3, 1988. I, Agent Mathiasen, obtained copies of eight (8) prescriptions for patient Olga Shaw, 208 New Litchfield Street, Torrington, CT for the purpose of verifying the authenticity of prescriptions by the prescribing practitioner and receipt of medication by patients. These prescriptions are described below:
PRESCRIPTION DRUG NAME QUANTITY DATED PHYSICIAN NUMBER
496972 Darvon Compound-65 100 8-28-84 Finn 496973 Tenuate Dospan 100 8-28-84 Finn 33637 Tenuate Dospan 100 2-13-86 Finn 33638 Darvon Compound-65 100 2-13-86 Finn 35502 Darvon Compound-65 100 12-02-86 Finn 35503 Tenuate Dospan 100 12-02-86 Finn 36663 Darvon Compound-65 100 6-06-87 Finn 36664 Tenuate Dospan 100 6-06 87 Finn
5. That, on April 21, 1988, I, Agent Mathiasen, and Drug Enforcement Administration Diversion Investigator Scott Collier spoke to Olga Shaw, CT Page 4720 208 New Litchfield Street, Torrington, CT. After reviewing the above mentioned copies, Mrs. Shaw stated that she had obtained each of the prescriptions and any and all refills for, these prescriptions. She further stated that Alfred J. Finn, M.D., 379 Prospect Street, Torrington, CT had been her physician and had authorized these prescriptions and the refills.
6. That, on April 29, 1988, I, Agent Mathiasen, and Diversion Investigator Collier obtained a statement from Dr. Finn. He stated that Olga Shaw is not and has never been his patient. He has no medical record indicating treatment nor personal recollection of prescribing medication for Olga Shaw. None of Dr. Tinn's associates have ever treated Olga Shaw.
9. That, on November 3, 1988, Mrs. Shaw stated in the presence of her attorney, Frederick P. Devine of Waterbury, CT, to Senior Agent Strickland, Diversion Investigator Collier, and I, Agent Mathiasen, that she had been receiving prescriptions from Crutch and McDonald Corner Drug Store for approximately seven years. Mrs. Shaw stated that she had been receiving the drugs at approximately the same intervals throughout the seven years, approximately one hundred of each drug per month. Mrs. Shaw stated that she knew that these were not valid prescription. She again stated that the only time that she had seen Dr. Finn was at her ear piercing clinic, never as a bona fide patient in his office.
From a review of the affidavits in support of the various searches, the court finds that all material seized must be suppressed. Agent Collier failed to obtain an administrative inspection warrant as required by 21 U.S.C, 880 and therefore he had no authority to search on March 3, 1988.
In the case at bar, 21 U.S.C. § 880 governs federal DEA Agent Scott Collier's actions on March 2 and 3, 1988. That section provides, in pertinent part:
 (b)(1) For the purpose of inspecting, copying, and terrifying the correctness of records, reports, or other documents required to be kept or made under this subchapter and otherwise facilitating the carrying out of his functions under this subchapter, the Attorney General is authorized, in accordance with this section, to enter controlled premises and to conduct administrative inspections thereof, and of the things specified in this section, relevant to those functions.
According to 880(c), a warrant is mandated in all but the following situations:
 (1) with the consent of the owner, operator, or agent in charge of the controlled premises;
(2) in situations presenting imminent danger to health or safety; CT Page 4721
 (3) in situations involving inspection of conveyances where there is reasonable cause to believe that the mobility of the conveyance makes it impracticable to obtain a warrant;
 (4) in any other exceptional or emergency circumstance where time or opportunity to apply for a warrant is lacking; or
 (5) in any other situations where a warrant is not constitutionally required.
Even though there is federal case law which holds that statutes authorizing warrantless searches, in some instances, may be reasonable and not violative of the Fourth Amendment. See New York v. Burger,482 U.S, 691 (1987) (junkyards engaged in dismantling automobiles); Donovan v. Dewey, 452 U.S. 594 (1981) (subsurface mining operations); United States v. Biswell, 406 U.S. 311 (1972) (firearms dealers); Colonnade Catering Corp. v. United States 397 U.S. 72 (1970) (alcohol);21 U.S.C. § 880 does not authorize warrantless searches of pharmacies. Despite the fact that the pharmaceutical field is a highly regulated industry, Congress has not authorized warrantless searches of pharmacies. Instead, the legislative history regarding 880 provides that:
 The provisions authorizing the issuance of judicial warrants for administrative inspections under the bill have been inserted because of the Supreme Court's decisions in Camara v. Municipal Court, 387 U.S. 523 [87 S.Ct. 1727, 18 L.Ed.2d 930] and See v. Seattle, 387 U.S. 541 [87 S.Ct. 1737, 18 L.Ed.2d 943] both decided on June 5, 1967. . . . The court held [in both cases that] a warrant was constitutionally required. . . .In deference to these decisions a provision for issuance of judicial warrants for administrative inspections has been inserted in the bill.
1970 U.S. Code Cong. Ad. News 4623. In fact Congress has established an elaborate scheme of applying for a warrant before a search may be conducted. See 21 U.S.C. § 880 (d).
Since the statute in question only authorizes warrantless searches in specific instances, unless the state can establish that one of the exceptions to the warrant requirement excited in this case, Agent Collier's warrantless entry and search of the defendant's pharmacy on March 2 and 3, 1988 did not conform to the specific statutory requirements of21 U.S.C. § 880. Consequently, the defendant's constitutional rights were violated and any and all evidence seized and all the fruits thereof must be suppressed.
While a search conducted pursuant to a valid consent is constitutionally permissible and an exception to the Fourth Amendment's warrant requirement, Schenckloth v. Bustamonte, 412 U.S. 218 (1973), Investigator Collier failed to obtain the defendant's consent to enter CT Page 4722 and inspect his pharmacy. In order to fall within the consent to search exception to the warrant requirement, the state bears the burden of proving that the consent was free and voluntary and that the person who purported to consent had the authority to do so. State v. Reagan, 209 Conn. 1
(1988).
Even though Agent Mathiasen had had prior contact with the defendant, she and Inspector Collier presented the Notice of Inspection of Controlled Premises form to Anthony J, Speck, a seventy four year old part-time pharmacist. Mr. Speck, as evidenced by his inability to complete the entire form, did not "have the authority to act in this matter." Since he was not able to certify that he was the President, Manager or Owner, he lacked the authority to consent to a warrantless search. The defendant was the only person who could have consented to the warrantless inspection since he is the only person who is either the President, Manager or Owner of Crutch and MacDonald Corner Drug Store. The defendant arrived shortly after Mr. Speck signed the consent form, yet they never showed the form to the defendant, nor did they request his consent.
Furthermore, an examination of the Statement of Rights contained in the form is a clear indication that Investigator Collier was required to obtain the consent of the defendant in order to enter and inspect the pharmacy without a warrant. First, it states that "[y]ou have a constitutional right not to have an administration inspection made without an administrative inspection warrant." Since the defendant, as the President, Manager and Owner of Crutch MacDonald Drug Store, is the only person who has a reasonable expectation of privacy against unreasonable searches and seizures conducted within the pharmacy, it was his constitutional right not to have an administrative inspection made without an administrative inspection warrant.
The Statement of Rights also was that "[a]nything of an incriminatory nature which may be found may be seized and used against you in a criminal prosecution." Again, this is aimed at warning the President, Manager or Owner of the pharmacy of the possible criminal repercussions that could result after a warrantless inspection. Since Agent Mathiasen already had conducted two prior inspections of Crutch MacDonald Corner Drug Store and discovered certain record-keeping discrepancies, as well as obtained a written statement from a physician concerning the validity of two prescriptions seized from the pharmacy, obviously she had focused her investigation on the defendant. Therefore, the defendant should have been given this particular warning, and not Mr. Speck. Accordingly, since the search of Crutch MacDonald Corner Drug Store was "conducted outside the judicial process, without prior approval by judge or magistrate," it was "per se unreasonable." Katz v. United States, 389 U.S. 347, 357 (1967) and therefore the evidence seized on March 3, 1988 must be suppressed.
Finally, a review of the affidavits in question demonstrate a complete lack of probable cause. As stated in State v. Delmonaco, CT Page 4723144 Conn. 331 at 339:
 In reviewing a search warrant affidavit the court "must ascertain whether the facts in the affidavit are sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant. State v. Williams, 169 Conn. 322, 326, 363 A.2d 72 (1975); State v. Rose, 168 Conn. 623-627-28, 362 A.2d 813 (1975); State v. Allen, 155 Conn. 385, 391, 232 A.2d 315 (1967)." State v. DeChamplain, 179 Conn. 522, 527-28, 427 A.2d 1338 (1980); see State v. Arpin, 188 Conn. 183, 193, 448 A.2d 1334 (1982). "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction. . , and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched."(Emphasis in original; citations omitted.) State v. DeChamplain, supra, 528-29; see State v. Arpin, supra. The reviewing court may consider only the information that was actually before the issuing judge at the time he or she signed the warrant. Aguilar v, Texas, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Girodenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); State v. Jackson, 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S.Ct. 198, 34 L.Ed.2d 121 (1972).
The May 23, 1988 and June 3, 1988 warrants indicate that Mrs. Shaw "obtained each of the prescriptions and any and all refills. . ." and that Alfred J. Finn, M.D. . . . had authorized these prescriptions. . . ." The fact that Dr. Finn at some subsequent date stated he had never treated Mrs. Shaw does not put the defendant on notice that the prescriptions were forged or otherwise invalid.
As to the December 13, 1988 warrant, it has the same disability which is not enhanced by Mrs. Shaw's statement that, "she knew that these were not valid prescriptions." There is no allegation that Mr. Doyle knew or should have known that the prescriptions were defective.
There is nothing in any of the affidavits "sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant." State v. DeChamplain, supra at 528. Accordingly, all items obtained by the search warrants of May 23, 1988, June 2, 1988 and December 13, 1988 are ordered suppressed. As to the copies of prescriptions obtained by Agent Mathiasen on August 3, 1987, the motion to suppress is denied. The court makes no finding as to whether the best evidence rule will bar their admissibility at trial; that is a matter which must be determined at trial.
PICKETT, JUDGE CT Page 4724