## State of Connecticut *v.* Gerard LeBlanc

Superior Court  JUDICIAL DISTRICT OF  FILE No. 5458
TOLLAND AT SOMERS

Memorandum filed May 26, 1988

*Donald B. Caldwell,* state's attorney, for the state.
*Leo B. Flaherty, Jr.,* for the defendant.

MACK, J., On December 10, 1984, Officers Wayne Rautenberg and Joseph Morrissey of the Manchester police department presented an affidavit and applications for two search warrants to Senior Judge Eugene Kelly in Manchester. The applications were for the search of a residence of the defendant at 379 Buff Cap Road in Tolland and of a Chevrolet van located in Ellington. Judge Kelly issued the warrants, which were

1

executed that day, resulting in the seizure of certain materials that the defendant moves to suppress. The defendant's motion alleges that the searches of his property were illegal because (1) the warrant was issued by a senior judge, not by a judge of the Superior Court as required by General Statutes § 54-33a, and (2) the affidavit in support of the warrant applications did not present facts sufficient to establish probable cause.

I

STANDING

In the absence of a claim or showing of a reasonable expectation of privacy in the area searched, the defendant does not have standing to move for the suppression of evidence seized. *State* v. *Altrui,* 188 Conn. 161, 179, 448 A.2d 837 (1982). The defendant bears the burden of establishing the facts necessary to demonstrate a basis for standing. *State* v. *Cardona,* 6 Conn. App. 124, 133, 504 A.2d 1061 (1986). Standing does not exist merely because the accused is the target of a search, because a third person's privacy has been invaded or because the accused has been charged with a possessory crime. *State* v. *Altrui,* supra. A party must, if he wishes to challenge the legality of a search, assert some proprietary or possessory interest sufficient to show that he actually expected privacy in the area searched and that that expectation was justifiable under the circumstances. *State* v. *Daay,* 5 Conn. App. 496, 498, 500 A.2d 248 (1985).

At the hearing on this motion to suppress the defendant made no attempt to demonstrate an expectation of privacy in either of the areas searched. As to the residence, however, standing is established on the basis of the affidavit submitted to support the warrant application, which states that the police found, through their

investigation, that the defendant was residing at 379 Buff Cap Road, Tolland, at the time of the search. It is well settled that a person has a reasonable expectation of privacy in his home. *Lewis* v. *United States,* 385 U.S. 206, 211, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966), reh. denied, 386 U.S. 939, 87 S. Ct. 951, 17 L. Ed. 2d 811 (1967). It is therefore found that the defendant has standing to challenge the legality of the search of his residence.

Although the affidavit does not establish that the defendant owned the van or the land upon which the van was parked, it does contain facts that establish that the defendant had a possessory interest in the vehicle. An informant stated that he personally had seen the defendant unlock the gate to the compound where the van was secured and unlock the van itself. The informant also gave information to the effect that the defendant was in control of the van, had installed security and venting devices in it and made regular trips to it for a period of a year. Therefore, the affidavit contained sufficient facts to establish that the defendant had sufficient interest in the van to challenge the legality of its search.

## II

### POWERS OF A SENIOR JUDGE

The defendant first claims that the search warrant was invalid because Judge Kelly, as a senior judge, lacked the authority to issue it.

The defendant is correct in his assertion that a search warrant, to be valid, must be signed by a person authorized to issue it. *State* v. *Surowiecki,* 184 Conn. 95, 97, 440 A.2d 798 (1981). The person authorized in Connecticut to issue search warrants is "any judge of the superior court." General Statutes § 54-33a (b).

The defendant contends that Judge Kelly, as a senior judge, is not a judge of the Superior Court. Rather, citing General Statutes § 51-50c (b), the defendant claims that Judge Kelly may perform only those duties to which he is designated and assigned. According to the defendant, Judge Kelly has been assigned to do criminal and civil work in the courts of the judicial districts of Tolland and Windham. Such an assignment, the defendant asserts, precludes him from issuing search warrants outside those judicial districts.

The defendant cites several statutes in support of his claim that Judge Kelly is not a Superior Court judge. The defendant refers the court to General Statutes § 51-165 (b), which provides for senior judges "[i]n addition" to the 146 judges of the superior court provided for in General Statutes § 51-165 (a). The defendant claims that this language suggests a legislatively intended distinction between senior judges and Superior Court judges. Another such distinction, the defendant asserts, is evident in General Statutes § 51-51h, which provides that chapter 872a, entitled "Removal, Suspension and Censure of Judges," applies to "judges of the superior court, judges of the appellate court and judges of the supreme court, and the term 'judges' as used in this chapter refers to such judges and also to senior judges and state referees."

The defendant is correct that Connecticut statutes make distinctions between Superior Court judges and senior judges. No claim has been made by the state that Superior Court judge and senior judge are synonymous titles. A senior judge of the Superior Court is any judge under the age of seventy who has retired from active service; General Statutes § 51-50i; but who has been designated and assigned by the Chief Court Administrator to such judicial duties as he or she is willing to undertake. General Statutes § 51-50c (b).

Thus, the titles senior judge and Superior Court judge are obviously not interchangeable. Nevertheless, it does not necessarily follow, as the defendant suggests, that the powers of a senior judge of the Superior Court and a Superior Court judge are also distinct. General Statutes § 51-50d provides: "Duties and powers of senior judges. (a) A senior judge shall have all the powers of a judge of the court to which he is designated and assigned. (b) A senior judge shall discharge, during the period of his designation and assignment, all judicial duties for which he is designated and assigned. He may be required to perform any duty which might be required of a judge of the court to which he is designated and assigned." The language of that statute unequivocally gives a senior judge of the Superior Court the same powers as any other judge of the Superior Court to which he is assigned.

The defendant claims that while subsection (a) of § 51-50d may appear to grant a senior judge all the powers of any other judge of the Superior Court, that grant is limited by subsection (b), which states: "He *may* be required to perform any duty which might be required of a judge of the court to which he is designated and assigned." (Emphasis added.) The defendant contends that "may be required" suggests that a senior judge may perform only specifically appointed duties. The defendant's argument on this point is meritless since § 51-50d, which is entitled "Duties and powers of senior judges," is quite clearly organized so that subsection (a) specifies the powers of a senior judge and subsection (b) specifies the duties he shall or may be required to perform. To read subsection (b) as a limitation on the powers granted in subsection (a), as the defendant suggests, would require the court to ignore the statute's articulated design, which is to define the duties and powers of senior judges. When the mean-

ing of a statute is so patently clear and unambiguous, there is no room for construction. *State* v. *James,* 197 Conn. 358, 363, 497 A.2d 402 (1985).

The defendant refers to several other statutory provisions that, he claims, demonstrate a legislative intent to limit the power of senior judges. One of those provisions is General Statutes § 51-50j. The defendant incorrectly asserts that § 51-50j authorizes senior judges to act in performance of judicial duties pursuant to a limited list of specified statutes that does not include § 54-33a, the section relating to the issuance of search warrants. Section 51-50j is a statute authorizing judicial duties of all retired judges, not senior judges. As noted earlier, a senior judge is a retired judge designated and assigned by the Chief Court Administrator to such judicial duties in the Superior Court as he is willing to undertake. General Statutes §§ 51-50c, 51-50i.

The defendant also cites, as indicative of a legislative intent to limit the power of a senior judge, the language in § 51-50c which provides that the Chief Court Administrator may designate and assign a senior judge to perform such judicial duties in the Superior Court as that judge is willing to undertake. While that language might support an argument that a senior judge may decline to undertake the duty of issuing search warrants, it in no way supports the defendant's contention that he may not legally issue them.

Finally, the defendant asserts that even if a senior judge does have the power to issue a search warrant, he may do so only in the judicial district to which he has been assigned because outside that district a senior judge has only the power of any other retired judge, that of a referee. Therefore, according to the defendant, since Judge Kelly has been assigned to do civil and criminal work in the judicial district of Tolland and

Windham, it is not within his power to issue search warrants in Manchester, located in the Hartford judicial district.

Since the court has concluded that § 51-50d gives a senior judge the same powers as any other judge of the Superior Court, this argument is without merit. The defendant does not contend that other judges assigned to the Tolland and Windham districts lack the authority to issue search warrants outside those judicial districts. Because the Superior Court in Connecticut is one court for the whole state: *Mower* v. *Department of Health,* 108 Conn. 74, 77, 142 A. 473 (1928); judges of the Superior Court are not geographically limited within the state in the exercise of their judicial powers. Therefore, senior judges, acting with the same powers as all Superior Court judges, may perform judicial duties, including the issuance of search warrants, outside the judicial districts to which they are assigned.

## III

### PROBABLE CAUSE FOR THE SEARCHES

The defendant next claims that the warrants authorizing the search of his home and his van were invalid because the affidavits used to support them presented insufficient facts for a finding of probable cause.

A warrant may be issued to search any property where there is probable cause to believe that fruits, instrumentalities or evidence of a crime may be found. *State* v. *Couture,* 194 Conn. 530, 536, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985). Whether there is probable cause is to be determined upon the facts stated in the affidavit purporting to establish grounds for issuing the warrant. Id. In considering the sufficiency of the affidavit we confine ourselves to the facts which appear on the face of the affidavit or which properly may be inferred

therefrom, testing those facts with common sense and reality and with great deference to the fact that the magistrate did determine that probable cause existed. Id. When a search warrant application is based upon the statement of an informer, however, the affidavit must satisfy the two-pronged test set forth in *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), which Connecticut has adopted in *State* v. *Kimbro,* 197 Conn. 219, 236, 496 A.2d 498 (1985). Under this test, the supporting affidavit must recite underlying circumstances that (1) reveal that the informant had a reasonable basis for believing that the material connected with criminal activity was presently located in a specified place, and (2) demonstrate that the informant was credible or his information was reliable. *Aguilar* v. *Texas,* supra, 114.

The warrant to search the van authorized the police to enter and search the vehicle for "[m]arijuana, plastic bags like Hefties and smaller plastic Ziploc bags commonly used to package marijuana for sale, scales, police scanners, weapons, money derived from the sale of marijuana, records of marijuana sales, implements used for the smoking of marijuana such as pipes etc., keys that belong to padlocks securing the rear door of the Chev. van described below and the keys to padlock that secures the large wooden doors that provide access to the compound where the Chev. van is stored, keys that belong to safety deposit boxes."

The defendant asserts that the warrant to search the van was not supported by probable cause because information about the van in the affidavit lacked sufficient detail and was not adequately corroborated to form a basis for probable cause.

The most significant information in the affidavit supporting probable cause for the search was that obtained

from an informant who, in December, 1987, reported personal observation of marihuana in the van. The informant further stated on December 9, the day before the search, that the defendant had recently made a pickup at the van sometime between December 5 and December 9 and that he had personally seen the defendant at the van. The informant gave the police a detailed description of the van, its location and many facts about the security of the vehicle. Such details included that the van was in a fenced area with a padlocked gate, that the back of the van was blocked off from the passenger section by plywood, that the windows were painted black and that the back door was padlocked. The informant also said that tires were placed next to the passenger door to prevent access and that the van was parked so close to a building that the driver's door could not be opened. He or she further stated that the defendant had control of the van for approximately one year, and that only the defendant and another individual, the owner of the landscaping business where the van was parked, had access to the van. The informant also stated that the defendant installed vents in the van to allow the venting of heat in hot weather. The informant told the police that the defendant had keys to the padlocks of the gate and van because he or she had personally seen the defendant open them. He or she said that the defendant sometimes made two or more trips a week to the van.

The defendant claims that the affidavit did not recite sufficient facts to support the basis of knowledge for the informant's information. The informant reported personal observations of marihuana in the van and of the defendant opening the gates and van. While the informant did not state his or her basis of knowledge for the other information, he or she did give sufficient detail, corroborated by the police as accurate, describing the van and its security features, from which the

judge issuing the warrant could infer a basis of knowledge. *Spinelli* v. *United States,* supra, 416. It is therefore found that the basis of knowledge prong of the *Aguilar-Spinelli* test has been satisfied as to the informant.

The defendant also challenges the reliability of the informant's information. The affidavit is, however, replete with information demonstrating that the informant was credible and his or her information reliable. The affiants stated that the informant had provided information on two other area drug dealers in the past, which information was verified by independent investigation and other informants. In addition, the police were able to corroborate, in subsequent investigation, most of the details supplied by the informant. The affidavit also contained further corroboration by another informant who told police in June, 1987, that he or she had learned from the defendant himself that his main marihuana inventory was kept at a landscaping garage in the area.

It is therefore found that the affidavit supporting the warrant to search the van contained sufficient facts to demonstrate that the informant was credible and his or her information reliable, thus satisfying the second prong of the *Aguilar-Spinelli* test.

The information contained in the affidavit provided a sufficient basis for a determination of probable cause to believe that marihuana and associated items were present in the van at the time of the search.

## IV

### THE RESIDENCE

The search warrant for the property at 379 Buff Cap Road, Tolland, authorized the police to search for: "Marijuana, plastic bags like Hefties and smaller plastic Ziploc bags commonly used to package marijuana for

sale, scales, police scanners, weapons, money derived from the sale of marijuana, records of marijuana sales, implements used for the smoking of marijuana such as pipes etc., keys that belong to padlocks securing the rear door of the Chev. van described below and the keys to padlock that secures the large wooden doors that provide access to the compound where the Chev. van is stored, keys that belong to safety deposit boxes." The defendant contends that there was no probable cause to believe that any of the above items were located at his home at the time the warrant was issued. According to the defendant, the affidavit neither contained a statement to the effect that the affiants or the informants were ever in the defendant's Tolland home nor did it set forth any facts observed by any person from which the presence of the specified items could be inferred.

The affidavit supporting the search warrant of the Tolland home recited that two informants in June and August of 1987, personally observed the presence of marihuana at the defendant's previous home in Vernon. The affidavit also stated that the defendant moved from the Vernon address to Tolland in the spring or summer of 1987, several months before the search of the defendant's Tolland home. There were no facts contained in the affidavit indicating that any person observed the presence of any of the materials sought by the warrant at the Tolland house at any time. In considering the sufficiency of a search warrant affidavit the court must confine itself to the facts that appear on the face of the affidavit or that properly may be inferred from them. *State* v. *DeChamplain*, 179 Conn. 522, 531, 427 A.2d 1338 (1980). In order to uphold the search of the Tolland residence the court would have to infer from the facts that, because marihuana was probably present in the defendant's Vernon home in the spring of 1987, there was probable cause to believe that it was also

present at another house several months later. The facts and circumstances set forth in an affidavit should be both current and timely; *State* v. *Rose,* 168 Conn. 623, 631, 362 A.2d 813 (1975); and the place specific. *State* v. *DeChamplain,* supra, 529. In the present case the information in the affidavit is neither.

The Connecticut Supreme Court, when asked to uphold a search based upon an affidavit with similar deficiencies, held in *State* v. *DeChamplain,* supra, 533; "We recognize that 'in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, and that their determination or probable cause should be paid great deference by reviewing courts.' . . . Nonetheless, the distinction between probable cause and mere conjecture still exists. '[T]he grounds for a search must satisfy objective standards which ensure that the invasion of personal privacy is justified by legitimate governmental interests.' . . . Although one may surmise that there was a chance that marihuana might have been found at apartment 7A, such conjecture does not rise to the level of probable cause to believe that marihuana, in fact, was located there." (Citations omitted.)

It has been noted that the affidavit at issue here contained the statement of the affiant officers to the effect that they knew from their experience that drug dealers always involve their homes in their drug operations to some degree. While the judge determining probable cause may credit statements based upon the experience of affiant officers; *United States* v. *Young,* 745 F.2d 733, 758 (2d Cir. 1984), cert. denied sub nom. *Myers* v. *United States,* 470 U.S. 1084, 105 S. Ct. 1842, 85 L. Ed. 2d 142 (1985); such statements alone are not enough to base a finding of probable cause to issue a search warrant.

There was no information in the affidavit upon which could be made a finding of probable cause to believe that marihuana, or marihuana related items were present at the time of the search in the defendant's home.

The warrant for the residence also authorized the police to enter and search the house for the keys to the padlocks that secured the gate to the compound where the Chevrolet van was located. Probable cause to believe that the key was located in the defendant's home must be evaluated separately from probable cause as to the marihuana and marihuana related items because information about the keys came from a different source in the affidavit. The primary informant, who was discussed at length in the portion of this memorandum evaluating the van search, told police in December, 1987, that the defendant possessed keys to the padlocks on the gate because he had personally seen them opened by the defendant. The informant also stated that the defendant had made regular trips, sometimes two or more times a week, to this compound. It has already been determined that that informant was a credible source of information with a reliable basis of knowledge. Therefore, it could reasonably be inferred, because the defendant was regularly in possession of the keys, that he kept the keys somewhere between trips to the compound. The most common and logical place to store keys when they are not actually in use is one's home, and it was reasonable to infer in this case that the keys to the gate padlocks would in all probability be found in the defendant's home. Consequently, the warrant to search the house for the keys to the padlocks was supported by probable cause and therefore valid.

## V

### CONCLUSION

The search warrant authorizing the search of the van was supported by probable cause and the motion to sup-

press items obtained in that search is denied. There was probable cause to search the defendant's home for the keys to the van but not for the marihuana and other items in the warrant. Therefore, the motion to suppress is denied as to the keys and granted as to the marihuana and all other items that were listed in the warrant and found in the home.