[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
On June 15, 1999 the plaintiff, Town of Darien (hereinafter Darien), applied for an order allowing it to enter and conduct an inspection on land owned by the defendants, Estate of F. Francis D'Addario; David D'Addario individually as an heir and as executor and trustee of the Estate of F. Francis D'Addario; Lawrence D'Addario, individually as an heir and as executor and trustee of the Estate of F. Francis D'Addario; Albert Paolini, as executor and trustee of the Estate of F. Francis D'Addario; Joan D. Benedetto; Ernest J. Benedetto, as trustee of the Joan D. Benedetto Grantor Retained Income Trust Indenture. (hereinafter collectively known as the "Estate"). The application concerns the land known as 137-139 Hollow Tree Ridge in the Town of Darien, County of Fairfield, State of Connecticut. Pursuant to General Statutes § 48-13, Darien wants to inspect and conduct Phase I and Phase II tests on the land because it currently contemplates condemning the land for municipal purposes. Avalon Bay Communities Inc. (hereinafter Avalon Bay) intervened as a defendant because it has an interest in purchasing the land.
On July 26, 1999, the court held a hearing concerning the plaintiffs application. At the hearing, Robert F. Harrel, Jr., First Selectman for Darien, testified on behalf of Darien. Mr. Harrel testified that he met with David D'Addario, a defendant, to discuss Darien purchasing the land in December of 1997. Their meeting, however, failed to result in the sale of the property to Darien. While no agency or board of Darien has yet designated the CT Page 16437 property for a public purpose, Mr. Harrel testified that possible public purposes for the land are the following: (1) a multi-generational center including a child care and senior center facility; (2) low income senior housing; (3) both indoor and outdoor athletic facilities; and (4) parking for athletic facilities or commuter parking. The Board of Selectman for Darien supported the town's application unanimously.
Mr. John Adams, a licensed environmental professor, testified on behalf of Avalon Bay concerning Phase I and Phase II environmental testing. Mr. Adams testified that Phase I testing involves a physical inspection of the land and research on whether the land had possible exposure to contaminants. To conduct Phase II testing, Mr. Adams testified that Darien would need soil and water samples from the land. According to Mr. Adam's testimony, collecting water samples for Phase II testing may involve placing pipes below the water table.
Following the hearing, Darien, the Estate, and Avalon Bay each submitted briefs. Both the Estate and Avalon Bay submitted reply briefs. The parties addressed the following issues in their briefs: (a) whether § 48-13 is constitutional; (b) whether §48-13 requires notification of condemnation in accordance with §8-129; (c) whether subsequent lienholders needed to receive notice of condemnation; and (d) whether the inspection of the land constitutes an administrative search that requires a search warrant.
A. CONSTITUTIONALITY OF THE GENERAL STATUTES § 48-13
General Statutes § 48-13 is constitutional because entering private property to conduct an inspection for a proposed condemnation fails to qualify as a taking. Pursuant to § 48-13, a condemning authority may enter land for "the purpose of inspection, survey, borings and other tests."[1] Article I, section 11 of the Connecticut constitution provides "[t]he property of no person shall be taken for public use, without just compensation therefor." "The word `taken' as used in the fifth amendment to the constitution of the United States and article first, § 11, of the Connecticut constitution means generally the exclusion of the owner from his private use and possession, and the assumption of the use and possession for the public purpose by the authority exercising the right of eminent domain." (Citations omitted; internal quotation marks omitted.) Tamm v. Burns, 222 Conn. 280, 292, 610 A.2d 590 (1992). CT Page 16438
Whether an inspection pursuant to General Statutes § 48-13 is unconstitutional is an issue of first impression in Connecticut. An overwhelming majority of courts have held that authorizing an inspection and tests on land does not deprive the owner of his private use and possession, especially when the owner receives compensation for damages. See Melvindale v. Trenton Co.,506 N.W.2d 540, 541 (Mich.App. 1993); Root v. Kamo Electric Co-op,Inc., 699 P.2d 1083, 1090-91 (Okla. 1985); Oglethorpe Power Corp.v. Goss, 322 S.E.2d 887, 890-91 (Ga. 1984); see also P. Guthrie Annotation, Eminent Domain; Right to Enter Land for Preliminary Survey or Examination, 29 A.L.R.3d 1104, 1115-17; 9 Nichols on Eminent Domain (3rd. Ed. Rev. 1999) § 32.06. Additionally, inspecting land for the purposes of condemnation fails to cause the landowner irreparable harm. See Trumbull v. Ehrsam,148 Conn. 47, 53, 166 A.2d 844 (1961) ("When public improvements are contemplated in a particular community, there may be some inconvenience or hardship imposed upon a landowner because of an uncertainty as to whether his land may be taken to promote the improvement, but this inconvenience attends all such proceedings and is incident to the ownership of property.") With respect to General Statutes § 48-13, the statute only authorizes a condemning authority to inspect, not take the land. Furthermore, General Statutes § 48-13 specifically provides "[s]uch condemning authority shall be responsible to the owner or owners of such property for any damage or injury caused by such entrance or use . . . ." Accordingly, the court holds that General Statutes §48-13 is constitutional.
With regards to Darien's application, the proposed testing that Darien seeks to conduct remains within constitutional limitations. Pursuant to § 48-13, Darien seeks to conduct Phase I and Phase II environmental testing. The Estate and Avalon Bay argue that the proposed testing constitutes an unconstitutional taking.[2] "A constitutional taking occurs when there is a substantial interference with private property which destroys or nullifies its value or by which the owner's right to its use or enjoyment is in a substantial degree abridged or destroyed." (Internal quotation marks omitted.) Tamm v. Burns, supra,222 Conn. 284. "The precise dimensions of a substantial interference sufficient to amount to a taking in the constitutional sense are not always clear since the concept of substantial interference is not a static one but one that has developed over the years in response to the changing needs of our society." (Internal quotation marks omitted.) Citino v. Redevelopment Agency, theCT Page 16439City of Hartford, 51 Conn. App. 262, 280, 721 A.2d 1197 (1998).
Conducting Phase I environmental testing fails to constitute an unconstitutional taking of the Estate's property. See Root v.Kamo Electric Co-op. Inc., supra, 699 P.2d 1190-91 (upholding right to conduct a proper precondemnation survey); County of Kanev. Elmhurst National Bank, 443 N.E.2d 1149, 1153 (Ill.App. 1982) (upholding constitutionality of statute that authorized preliminary surveys or appraisals prior to condemnation). The physical inspection of the land conducted in Phase I testing would fail to interfere substantially with the Estate's use and enjoyment of the land. See Cleveland Bakers Union, Etc. v. State.Etc., 443 N.E.2d 999, 1002 (Ohio App. 1981) ("Conducting a survey, sounding, appraisal, or examination . . . would not substantially interfere with the property rights of the owner.") Accordingly, Darien may conduct Phase I environmental testing on the Estate's property.
Regarding Phase II environmental testing, collecting water and soil samples fails necessarily to constitute an unconstitutional taking of the Estate's property.[3] SeeMelvindale v. Trenton Co., supra, 506 N.W.2d 541 (authorizing state agency entry on land when "statute expressly provides that a government agency may enter property before filing an action for condemnation for the purpose of making surveys, measurements, examination, tests, soundings, and borings, for taking photographs or samplings, or to determine whether the property is suitable to take for public purposes."); Power Authority of theState v. Bowen, 511 N.Y.S.2d 146, 147 (1986) (removing restrictions on state agency's ability to conduct surveying, inspections, and test borings on defendant's private property when preparing final design plans for condemnation of land). Darien, however, must limit Phase II environmental testing to tests absolutely necessary to ascertaining an environmental analysis of the Estate's land to avoid an unconstitutional taking. See Oglethorpe Power Corp. v. Goss, supra, 322 S.E.2d 891 (holding "any order for . . . [a preliminary survey] authorizing the cutting of trees ought to do so only to the extent it is an unavoidable incident of permissible preliminary surveying.") As such, if the Phase I testing reveals no potential problems, then Darien must refrain from conducting Phase II testing. Darien, then may conduct Phase II environmental testing only if it demonstrates a need for the testing to the Superior Court. Accordingly, Darien must receive judicial permission prior to conducting Phase II environmental testing. CT Page 16440
B. REQUIREMENTS OF FORMAL NOTICE OF CONDEMNATION UNDER § 8-129 WITH RESPECT TO § 48-13
General Statutes § 48-13 fails to require notification of condemnation in accordance with the provisions of General Statutes § 8-129 because neither the legislative history nor statutory language indicates a legislative intent to interpret the statutes tangentially.[4] "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." Ambroisev. William Raveis Real Estate, Inc., 226 Conn. 757, 764,628 A.2d 1303 (1993). While the legislature originally enacted both §8-129 and § 48-13 in 1955, neither statute makes reference to the other. Consequently, if the legislature wanted the notice in §48-13 to comply with notice requirements of § 8-129, it would have referenced § 8-129 in § 48-13. See (Internal quotation marks omitted.) Linden Condominium Assn. Inc. v. McKenna,247 Conn. 575, 583 ___ A.2d ___ (1999) ("We presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law.")
Furthermore, requiring a formal notice of condemnation in accordance with § 8-129 to authorize for the inspection would create an irrational result because § 48-13 specifically provides for an inspection "either before or after the institution of a condemnation proceeding." (Emphasis added). "[P]rinciples of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. . . . We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Citations omitted; internal quotation omitted.) Turner v. Turner, 219 Conn. 703,712-13, 595 A.2d 297 (1991). In particular, a condemnation statute "should not be interpreted in such a way as to thwart the purpose for which it was enacted." Northeastern Gas TransmissionCo. v. Collins, 138 Conn. 582, 592, 87 A.2d 139 (1952). Construing § 48-13 to require a formal notice of condemnation would frustrate the apparent intent of the legislature to allow inspection of the land prior to condemnation proceedings. AccordCounty of Kane v. Elmhurst National Bank, supra, 443 N.E.2d 1153 ("Given the purpose of the statute to facilitate a decision on CT Page 16441 whether to condemn it would not be logical to require the plaintiff institute condemnation proceedings before making a preliminary minimally intrusive entry.") Accordingly, the court holds that notice required in § 48-13 is not the formal notice procedure set forth in § 8-129. As such, Darien's failure to comply with § 8-129 does not make its application defective.
C. NOTIFICATION TO SUBSEQUENT LIENHOLDERS
Darien did not have to give notification to subsequent lienholders in order to receive an order to inspect the property. General Statutes § 48-13 only provides for "reasonable notice to property owners or owners affected." Consequently, § 48-13 fails to require notification to lienholders. While § 48-21 requires subsequent lienholders to receive notification under certain statutory condemnation procedures, § 48-21 fails to mention §48-13.[5] Furthermore, § 48-21 fails to require notification under General Statutes § 48-12, which sets forth the procedure for a municipality to condemn land.[6] Accordingly, in the absence of a statutory provision requiring lienholders to receive notification of the inspection, Darien was not required to give notice to the lienholders on the Estate's property.
D. ADMINISTRATIVE SEARCH
The court will not consider whether Darien's inspection of the Estate's property constitutes an administrative search because Avalon Bay lacks standing to challenge the search of the property.[7] "The touchstone to determining whether a person has standing to contest an allegedly illegal search is whether that person has a reasonable expectation of privacy in the invaded place. . . . Absence such an expectation, the . . . [state] action has no constitutional ramifications. (Citations omitted; internal quotation marks omitted.) State v. Hill, 237 Conn. 81,92, 675 A.2d 866 (1996). Avalon Bay's interest in purchasing the property fails to constitute a reasonable expectation of privacy in the property. See State v. LeBlanc, 41 Conn. Sup. 1, 2,548 A.2d 485 (1988) ("A party must, if . . . [it] wishes to challenge the legality of a search, assert some proprietary or possessory interest sufficient to show that he actually expected privacy in the area searched and that expectation was justifiable under the circumstances.") Accordingly, the court will not address whether the inspection qualifies as an administrative search because Avalon Bay lacks standing to challenge the search. CT Page 16442
CONCLUSION
Based on the foregoing, the court grants Darien's application to conduct Phase I environmental testing. Darien, however, may conduct Phase II environmental testing only if it demonstrates a need for the testing to the Superior Court. Accordingly, Darien must receive judicial permission prior to conducting Phase II environmental testing.
MINTZ, J.